ENGLAND v. COMMERCIAL BANK OF NEW MADRID, MO.

(Circuit Court of Appeals, Eighth Circuit.    April 6, 1917.)

No. 4762.

1. CONTRACTS ⬥136—ILLEGALITY—PARTIES ENTITLED TO OBJECT.

That an exchange of notes by two banks, with an agreement for a re-exchange on demand, was for the purpose of evading the banking laws of the state, did not inure to the benefit of the bank refusing to make such re-exchange, where the state was not seeking to enforce any obligation or penalty for a violation of its laws, as it was the only party who had a right to complain.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 681–700.]

2. BANKS AND BANKING ⬥114—REPRESENTATION BY OFFICERS—RATIFICATION OF ACTS.

That the president of a bank, in exchanging notes with another bank, had no authority to agree to re-exchange on demand, did not defeat the right of the other bank to recover its note or the proceeds, since if the bank adopted the act of its president, and thus got possession of the note, it adopted the entire transaction, while, if the president did not act for it, it had no right to the note or its proceeds.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 277–280.]

3. BANKS AND BANKING ⬥101—EFFECT OF ACTS—ULTRA VIRES.

That the contract was ultra vires did not defeat the right to recover the note or its proceeds, since, while the courts will not sustain an action on the unlawful contract, they strive to do justice so far as can be done by permitting property or money parted with on the faith of the unlawful contract to be recovered back or compensation to be made for it.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 237, 238.]

4. BILLS AND NOTES ⬥207—TRANSFER—CONSIDERATION.

Where the note transferred to one of the banks was never the property of the other, and moreover was worthless, there was no consideration passing to the first bank for its note, and it was entitled to the return of the note or its proceeds.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 496, 511.]

5. COSTS ⬥207—COUNSEL FEES—NECESSITY OF EVIDENCE AS TO VALUE.

An order allowing attorney's fees will be reversed, where there is no proof of the value of the legal services in the amount allowed or any other amount.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 781–787.]

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit by Lloyd England, receiver for the State National Bank of Little Rock, Ark., against Murray Phillips and another, who interpleaded the Commercial Bank of New Madrid, Mo.    From a decree in favor of the Commercial Bank, and from an order allowing an attorney's fee, plaintiff appeals.    Decree affirmed, and order reversed, with instructions.

Chas. Claflin Allen, of St. Louis, Mo. (George J. Breaker, of St. Louis, Mo., on the brief), for appellant.

Thomas Gallivan, of New Madrid, Mo. (Riley & Riley, of New Madrid, Mo., on the brief), for appellee.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before CARLAND, Circuit Judge, and RINER and MUNGER, District Judges.

RINER, District Judge. This was a suit brought by Lloyd England, receiver for the State National Bank of Little Rock, Ark., against Murray Phillips and Annie M. Phillips, to recover the sum of $10,000, together with interest, upon a promissory note dated June 25, 1913, signed by Murray Phillips and Annie M. Phillips. The note by its terms became due one year after its date, and drew interest at the rate of 8 per cent. per annum. It was made payable to the order of the makers, and by them indorsed in blank. Murray Phillips and Annie M. Phillips filed an answer in which they admitted that they executed the note in controversy and delivered the same to the Commercial Bank of New Madrid, Mo. They further alleged that the Commercial Bank of New Madrid had notified them that it was the owner of the note, and that the receiver of the State National Bank had no right, title, claim, or interest therein, and that they should not pay the amount due upon the note to the receiver or to any other person except to the Commercial Bank of New Madrid. They further alleged in their answer that they were ready and willing to pay the note, and that they had deposited the funds for the payment thereof in the Commercial Bank of New Madrid, the place of payment designated in the note, and that they had, prior to the suit, asked that the note be forwarded to the State Bank for delivery to them; that they had no interest whatever in the funds except to pay the same to the party to whom the same was due; that they did not know who was the proper party to whom the money should be paid, and asked that they be permitted to pay into court the amount due on the note, and that the receiver and the Commercial Bank of New Madrid be required to interplead therefor for the purpose of determining to whom the money should be paid. Upon the written stipulation of the parties in interest, consenting thereto, the court entered an order directing Murray Phillips and Annie M. Phillips to pay the sum due upon the note into court, and directed that the Commercial Bank of New Madrid interplead in the suit, and show cause, if any, why the money placed in the hands of the court by Murray Phillips and Annie M. Phillips to take up the note should not be paid to the receiver. Pursuant to the terms of the order of the court, the Commercial Bank of New Madrid filed an interplea, in which it admitted that Lloyd England was the duly appointed and acting receiver of the State National Bank of Little Rock, Ark., and then alleged that it was a corporation duly organized, existing, and doing business at New Madrid, Mo., under and by virtue of the laws of the state of Missouri. It further alleged that on the 22d of September, 1913, and at the time the interplea was filed, it was the owner of the note in controversy. It further alleged that the State National Bank of Little Rock, Ark., had possession of the note under and by virtue of an agreement made and entered into between that bank and the Commercial Bank, by the terms of which the State National Bank of Little Rock was to take possession of the note and hold the same until requested by the Commercial Bank to return it, and to deliver to the Commercial Bank a note, the property of the State National Bank, of equal value, to be held by the Commer-

cial Bank until the note delivered to said State National Bank was returned to the Commercial Bank; that, pursuant to the terms of the agreement, the Commercial Bank sent the note in controversy to the State National Bank, and received in lieu thereof from the State National Bank a note for $10,000 executed by the State Trust Company, a corporation organized under the laws of Arkansas; that this last-mentioned note was not the property of the State National Bank, was worthless, and was sent to the Commercial Bank for the purpose and with the intent to cheat and defraud it out of the note in suit; that prior to the bringing of this suit the Commercial Bank returned the note of the State Trust Company, together with the collateral, to the State National Bank at Little Rock, and demanded a return of the Phillips note pursuant to the terms of the agreement; that the State National Bank, in furtherance of its purpose to cheat and defraud the Commercial National Bank, refused to return the Phillips note; that after the appointment of the receiver the Commercial Bank tendered the note of the State Trust Company and collateral to the receiver, and again demanded the return of the Phillips note, and that this request was refused by the receiver. It then tendered the note and collateral in court to be returned to the receiver. It was further alleged in the plea that there was no consideration whatever passing from the State National Bank to the Commercial Bank for the note in suit, and it prayed that the Commercial Bank be adjudged the owner thereof, and that the proceeds deposited in court be ordered paid to it.

To this plea the receiver filed an answer denying the agreement between the State National Bank and the Commercial Bank to re-exchange the notes, and alleging that the State National Bank was the owner of the note in suit. He further alleged that the contract and agreement set out in the plea filed by the Commercial Bank, if made, was wholly ultra vires of the powers conferred upon both the State National Bank and the Commercial Bank.

At the final hearing the court found the facts as set forth in the interplea filed by the Commercial Bank, and ordered the moneys deposited in the registry of the court by Murray Phillips and Annie M. Phillips paid to the Commercial Bank, and directed that the note of the State Trust Company and the collateral be delivered to the receiver.

We think the evidence supports the finding made by the trial court. The record shows that at the time the notes were exchanged the makers of the note in controversy were indebted to the Commercial Bank of New Madrid in the sum of $40,000. This was in excess of the amount the bank could loan to any one person or party under the laws of Missouri. The State Bank Examiner had complained of this excess loan, and had directed the bank to reduce it, and in order to meet the requirement of the State Bank Examiner it was agreed between the State National Bank, through Mr. Garanflo, its president, acting for it, and the board of directors of the Commercial Bank, acting for it, that the banks would exchange notes, the Phillips note here in suit to be sent to the State National Bank, and the State National Bank to send from its notes to the Commercial Bank a note of like amount to be substituted for the Phillips note, with the agreement that upon de-

mand these notes should be re-exchanged; that the Phillips note was sent to the State National Bank, and that bank forwarded to the Commercial Bank, in lieu of the Phillips note, a note executed by the State Trust Company of Little Rock, together with some shares of the capital stock of the State National Bank as collateral; that the Commercial Bank tendered to the State National Bank the State Trust Company note and collateral, and demanded a return of the note in suit, but this demand was refused by the State National Bank; that after the appointment of a receiver a like tender and demand were made upon him and by him refused.

[1] It was insisted at the argument that as the Commercial Bank had engaged in this transaction for the purpose of getting the Phillips note out of its assets, and thus diminishing its holdings of the Phillips paper, which was at that time in excess of the amount permitted by law, the agreement for a re-exchange of the notes could not be enforced in equity, for the reason that the very purpose of the agreement was to evade the laws of the state of Missouri and to deceive the State Bank Examiner. Even if such was the purpose of the agreement, as it undoubtedly was, we are wholly unable to see how that fact can in any way inure to the benefit of the State National Bank. The state of Missouri, the only party, if any, who had a right to complain of the transaction, is not a party to this suit, and is not here seeking to enforce any obligation or penalty for a violation of the laws of Missouri by the Commercial Bank.

[2, 3] It was also suggested in argument that the president of the State National Bank had no authority, either express or implied, to make any agreement for the retransfer of the notes, and that his knowledge cannot be imputed to the bank; that the agreement for the retransfer of the notes, in fraud of the laws of the state of Missouri, was wholly ultra vires of the State National Bank. This contention is, we think, without merit. If Garanflo, the president of the State National Bank, did not act for the bank, the bank would have no right to the possession of the note or to its proceeds. On the other hand, if the bank adopted his act as the act of the bank, and thus got possession of the note, it must be held to have adopted the entire transaction, including the agreement to re-exchange the notes upon demand. In other words, the bank cannot affirm a part of the transaction, which is to its advantage, and repudiate the rest. And the fact that the agreement was ultra vires would not defeat the right of the Commercial Bank to recover the note or its proceeds. In Central Transp. Co. v. Pullman's Palace Car Co., 139 U. S. 60, 11 Sup. Ct. 488, 35 L. Ed. 55, Mr. Justice Gray, speaking for the Supreme Court, said:

"A contract ultra vires being unlawful and void, not because it is in itself immoral, but because the corporation, by the law of its creation, is incapable of making it, the courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the parties, so far as could be done consistently with adherence to law, by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back, or compensation to be made for it. In such case, however, the action is not maintained upon the unlawful contract, nor according to its terms; but on an implied contract of the defendant to return, or, failing to do that, to make compensation for, property or money which it has no right

to retain. To maintain such an action is not to affirm, but to disaffirm, the unlawful contract."

And in Pennsylvania R. R. v. St. Louis, etc., R. R., 118 U. S. 317, 6 Sup. Ct. 1106, 30 L. Ed. 83, Mr. Justice Miller, in discussing a similar question, said:

"But we understand the rule in such cases to stand upon the broad ground that the contract itself is void, and that neither what has been done under it, nor the action of the court, can infuse any vitality into it. Looking at the case as one where the parties have so far acted under such a contract that they cannot be restored to their original condition, the court inquires if relief can be given independently of the contract." Logan County National Bank v. Townsend, 139 U. S. 67, 11 Sup. Ct. 496, 35 L. Ed. 107, and cases there cited.

The rule is very clearly stated by Mr. Justice Harlan in the case last cited. That was a suit to recover bonds held by a bank under an agreement to replace them at a fixed price, upon tender back of the amount it had paid for them. The bank, upon the amount being tendered, refused to carry out the terms of the agreement and suit was brought by the vendor to recover possession of the bonds. The court, in the course of its opinion, said:

"From the time of such demand and its refusal to return the bonds to the vendor or owner, it becomes liable for their value upon grounds apart from the contract under which it obtained them. It could not rightfully hold them under or by virtue of the contract, and at the same time refuse to comply with the terms of purchase. If the bank's want of power, under the statute, to make such a contract of purchase may be pleaded in bar of all claims against it based upon the contract—and we are assuming, for the purposes of this case, that it may be—it is bound, upon demand, accompanied by a tender back of the price it paid, to surrender the bonds to its vendor. The bank, in this case, insisting that it obtained the bonds of the plaintiff in violation of the act of Congress, is bound, upon being made whole, to return them to him. No exemption or immunity from this principle of right and duty is given by the national banking act. 'The obligation to do justice,' this court said in Marsh v. Fulton County, 10 Wall. 676, 684 [19 L. Ed. 1040], 'rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independently of any statute, will compel restitution or compensation.' " Citizens' National Bank v. Appleton, 216 U. S. 196, 30 Sup. Ct. 364, 54 L. Ed. 443.

[4] The record shows that the note executed by the Trust Company and forwarded by the State National Bank to the Commercial Bank in exchange for the Phillips note was never the property of the State National Bank; that that bank never had any interest in it, and that the note was worthless. The receiver, when called as a witness, testified:

"That there were no entries in the books of the State National Bank showing that the Trust Company note sent to the Commercial Bank was the property of the State National Bank at the time that it was sent to them, and that there was nothing on the books of the State National showing any liability on the part of that bank to the Commercial Bank on account of the purchase of the Phillips note."

That being true, there was no consideration passing from the State National Bank to the Commercial Bank for the Phillips note, and common honesty requires that the State National Bank return either the note or its proceeds to the Commercial Bank. Pullman's Palace Car Co. v. Central Transp. Co., 171 U. S. 138, 151, 18 Sup. Ct. 808, 43

L. Ed. 108; Merchants' Bank v. State Bank, 10 Wall. 604, 19 L. Ed. 1008; United States v. State Bank, 96 U. S. 30, 24 L. Ed. 647; Louisiana v. Wood, 102 U. S. 294, 26 L. Ed. 153.

The decree of April 21, 1916, made and entered by the district court, directing that the money deposited in the registry of the court pursuant to the stipulation of the parties and order of court be paid to the Commercial Bank, is affirmed.

[5] After the entry of the decree just affirmed, and on the 5th of May, 1916, the district court made a further order in the cause allowing the Commercial Bank an attorney's fee of $750, and directing that the same be taxed as a part of the costs. We are unable to find in the record any basis whatever for the allowance of this attorney's fee, and counsel for the Commercial Bank conceded at the argument that the bank was not entitled to it. Moreover, there was no proof of the value of legal services in the amount stated in the order, or any amount, in favor of any of the parties to the litigation, and this order of the district court must be reversed, with instructions to set it aside.