PHILLIPS *v.* PINE BLUFF, SHERIDAN & SOUTHERN RAILWAY COMPANY.

Opinion delivered December 9, 1918.

1. RAILROADS — FORECLOSURE OF MORTGAGE — DISTRIBUTION OF PROCEEDS.—Where one who held railroad stock merely for the accommodation of others, having no interest therein, advanced money to the corporation, he was entitled to participate as a creditor in the distribution of the proceeds of a mortgage foreclosure sale.

2. RAILROADS—FORECLOSURE OF MORTGAGE—MATTERS TO BE LITIGATED. —Where a stockholder in a railroad corporation filed a petition after purchase of corporate property on foreclosure of a mortgage, asking credit to the extent of mortgage bonds held by him, he is so far a party as to be bound by the court's adjudication in the distribution of the proceeds of sale.

3. RAILROADS — FORECLOSURE OF MORTGAGE — DISTRIBUTION OF PROCEEDS.—One loaning to a railroad corporation in which he owns no stock, but who is stockholder in a corporation interested in the railroad company, and who induces a third person to hold stock in the railroad company for his corporation, so that his company will not appear to be interested, must be regarded as an investor and not as a creditor.

4. CONTRACTS—VIOLATION OF LAW—PARTIES IN PARI DELICTO.—The fact that one who loaned money to a railroad company acted as a dummy in holding railroad stock so as to permit the real owners to evade the interstate commerce law may not be taken advantage of by parties equally in the wrong, but only by the Government.

5. RAILROADS—MORTGAGE FORECLOSURE—DISTRIBUTION OF PROCEEDS.— Where a creditor held a railway company's notes, and a subsequent mortgage was given to secure bonds with provision that he

could exchange his notes for bonds, such right remained open upon mortgage. foreclosure, and equity will treat the conversion as accomplished and permit him to share in the distribution of the proceeds.

6. RAILROADS—MORTGAGE—DISTRIBUTION OF PROCEEDS.—The principle that where a part of the consideration for a mortgage is fictitious or fraudulent the whole instrument is void as against third parties, as applied to secure advances made by the real owners of the mortgagor corporation, does not extend to the prejudice of innocent holders of the mortgage notes.

Appeal from Grant Chancery Court; *J. P. Henderson*, Chancellor; reversed.

*Manning, Emerson & Donham* and *Gallivan & Finch*, for appellants.

1. Appellants have real claims which have been allowed and no exceptions filed thereto; they are *real creditors* of the road and McIntyre and McIntyre & Son who are owners of all the outstanding notes and bonds except those held by Mrs. Garanflo and Gallivan and Phillips are not creditors and ought not to be allowed to participate in assets of the road until the *real* creditors of the road are paid in full, and then they will be entitled to distribution of the remaining assets, not as creditors but as stockholders or owners.

Although the stock was not subscribed in the names of the real owners, a court of equity will look below the surface and determine who they were. 134 Fed. 665. Phillips had no real interest in the railroad or property; put no money in it and devoted no time to the business. The real owners were McIntyre, Garanflo and the Manns. The evidence is clear and convincing that the owners of the timber land were the holders and owners of the railroad.

2. When an individual embarks in business all his assets are liable for his obligations. The capital stock of a corporation is the security for the payment of its debts—a trust fund therefor. The money advanced by McIntyre, Garanflo, the Manns and McIntyre-Mann Timberland Co. was payment on capital stock or investment.

The testimony shows this. It was not a loan and did not constitute them creditors. 6 Ill. App. 257.

3. The mortgage on the railroad to secure the bonds was void as to creditors because part of the consideration is fictitious or fraudulent. 118 Mo. 376; 12 S. W. 809; 55 Equity Rep. 691.

4. 242 Fed. Reporter 816 is a complete answer to the argument that Phillips could not be heard to take the position that he was not in fact one of the real owners but held the stock for some one else because the evidence discloses an agreement to avoid a ruling of the Interstate Commission. McIntyre is not now and never was a creditor and his claim should not be allowed; but the assets of the railroad should first be applied to the debts of the corporation.

*Chas. T. Coleman,* for appellees.

1. The contest here is between the holder of unsecured notes of the railroad company and the holder of its bonds held under a valid deed of trust. The mortgage creditor is entitled to priority and the court so held. Phillips and Gallivan are mere unsecured note holders. McIntyre is not a party to the suit. Phillips and Gallivan have shown no equities superior to the mortgage bondholders. The mortgage is not void but valid. The holders of the stock of the McIntyre-Mann Co. were not stockholders of the railroad company, but if they were that would not change the legal aspect of the question for they could in good faith loan money to the railroad company and secure it by a mortgage. Railroads are not built in this State on stock subscriptions, but are financed by a sale of bonds. Kirby & Castle's Digest, § § 8037-8041. The bondholders hold a preference or priority over all simple contract creditors. Phillips cannot complain for he advanced no money on the credit of the railroad company. He merely loaned to his friends, the Manns and Garanflo. McIntyre has no interest and is not a party.

118 Mo. 376 and 12 S. W. Rep. 809 have no application in this case. The mortgage here is valid and the

mortgage creditors (here England, Receiver,) were properly preferred. The decre should be affirmed.

McCULLOCH, C. J. The Pine Bluff, Sheridan & Southern Railway Company was duly incorporated under the laws of this State on July 10, 1912, for the purpose of constructing and operating a railroad about fifteen miles in length, situated wholly in Grant County. The authorized capital stock of the corporation was $150,000, of which $30,100 was subscribed and five per centum was paid on the subscriptions. Of the stock actually subscribed 233 shares thereof were issued to Murray Phillips, one of the appellants, 50 shares to E. S. McCarty, 10 shares to R. D. Duncan, and one share each to certain citizens and residents of Grant County. The par value of the stock was $100 per share.

The enterprise was originally projected by the owners of certain timber lands in Grant County for the purpose of constructing a short line railroad to operate in hauling timber from said lands to the mill, and the road was partly constructed under that arrangement, but subsequently it was decided by the interested parties to incorporate as a commercial railroad for the purpose of deriving the revenues to accrue from operating such road, as well as to participate in the through rates on shipments of the product of the mill to market. In other words, it seems the idea was to change from a tap line railroad to a regular commercial railroad. The timber lands were owned by a corporation called the McIntyre-Mann Timber Land Company, and the stock in that corporation was owned by J. F. McIntyre, J. F. McIntyre & Sons (a corporation), Mann & Garanflo Land & Lumber Company (another corporation), and certain individuals who were stockholders in the last named corporation.

Murray Phillips was not interested in the timber lands, nor in the other operations in Grant County, but when it was decided by the interested parties to incorporate the railroad he was requested by those parties, who were his friends, and with whom he was associated

in certain business ventures in the State of Missouri, to allow the shares of stock to be issued in his name merely as a matter of accommodation so that it would not appear that the shares of stock were owned by the persons who owned the timber lands and were to ship the product of the timber. The admitted purpose of this arrangement was to escape the effect of a ruling of the Interstate Commerce Commission forbidding ownership by public carriers of timber lands from which timber was to be hauled by the carrier. The active parties in putting through this arrangement were W. H. Garanflo, J. F. McIntyre, and Messrs. David and Fred Mann, who were owners of stock in the interested corporations. At a meeting in the city of Little Rock between Phillips and the gentlemen named above it was agreed that 233 shares of stock be issued to Phillips pursuant to the arrangement just indicated and that the real parties in interest would pay the subscriptions, it being expressly understood that Phillips was not to participate in the management of the corporation, or to have anything to do with its affairs further than to sign the incorporation papers. This arrangement was carried out, and the parties in interest paid the subscriptions on the shares of stock issued to Phillips, and the latter paid nothing, and did not thereafter participate in the affairs of the corporation. He merely signed the articles of incorporation. The interested parties proceeded to construct the railroad and agreed to furnish the money for that purpose in proportion to their holdings of stock in the corporation which were to derive benefit from the operation of the road, According to that arrangement McIntyre was to furnish one-third of the money, and Garanflo and the two Manns were to furnish the other two-thirds. Negotiable promissory notes of the railway corporation, payable to its own order, of the denomination of $5,000 each, and aggregating the sum of $90,000, were duly executed and placed in the hands of Garanflo to be delivered to the respective parties as they furnished money to be used in constructing the road. McIntyre furnished the sum of $30,000,

and notes aggregating that amount were delivered to him. Garanflo and the two Manns furnished $50,000, and notes for a sum to that extent fell to them.

Garanflo applied to Phillips for a loan of $10,000 to the railway corporation and Phillips made the loan, which was used by the corporation. On account of his confidence in the financial responsibility of Garanflo and the Manns, Phillips took the notes of those parties for the $10,000, and two notes of the railway corporation aggregating that amount were assigned to him as collateral. The testimony, however, shows that the money was intended as a loan to the railway corporation. Subsequently the directors of the railway corporation authorized the execution of a mortgage on the railroad properties for the sum of $150,000 to be evidenced by 150 notes or bonds, each for the sum of $1,000, upon which money should be borrowed, and passed a resolution providing that the holders of the $5,000 notes should have the right to convert their holdings into the bonds secured by the mortgage. Bonds secured by the mortgage to the extent of $91,000 were delivered, and 70 of those bonds were delivered to McIntyre to cover the indebtedness of the corporation to him. Phillips did not exchange his notes for the bonds secured by mortgage, but is still the holder of the original notes. One of the mortgage notes, however, for the sum of $1,000 was delivered to him as collateral security and the sum of $1,000 was also paid to him on the indebtedness, leaving a balance of $9,000 on the principal. In addition to the $90,000 in notes of the railway corporation of the denomination of $5,000 each, eight notes aggregating the sum of $40,000 executed by the railway corporation were delivered to the McIntyre-Mann Timber Land Company, and six of these notes together with $30,000 of the secured notes or bonds were hypothecated with the State National Bank of Little Rock, a banking corporation which subsequently became insolvent and passed into the hands of Lloyd England, receiver, by order of the Comptroller of the Currency.

Mrs. Garanflo, wife of W. H. Garanflo, became a creditor of the railway corporation for money advanced for operating purposes after the execution of the mortgage aforesaid, her indebtedness aggregating the sum of $1,800, and mortgage bonds covering that amount were delivered to her. On October 22, 1915, Mrs. Garanflo instituted an action in the chancery court of Grant County against said railway corporation setting forth the debt due her by that corporation and asking for the appointment of a receiver, and thereafter Lloyd England, as receiver of the State National Bank, filed his petition in that suit setting forth the indebtedness of the railway corporation as evidenced by the notes held by him as such receiver, and England also filed an independent suit in the chancery court of Grant County against the railway corporation asking for foreclosure of the mortgage on the railroad properties. He alleged in his complaint that he was the holder of mortgage notes or bonds aggregating $90,000, but it appears from the proof taken in the cause that seventy of those notes really belonged to McIntyre and were assigned and delivered to the receiver merely for the purpose of enabling him to sue for a foreclosure of the mortgage. Phillips assigned the notes of the railway corporation held by him to Thomas H. Gallivan, who, together with Phillips, filed an intervention asking that the claim be allowed and declared a lien on the property of the company. The court consolidated the two actions and appointed a receiver to take charge of the railroad properties and operate the same. A decree was rendered by the court directing a foreclosure of the mortgage on the railroad properties and appointed a commissioner to make the sale. The sale was made pursuant to that decree and McIntyre became the purchaser of the property for the sum of $51,500. The court's decree contained the following clause:

"All matters and claims not expressly adjudicated by this decree are hereby reserved for further consideration and all questions of the right of priority of liens or of payment out of the proceeds of the sale of said rail-

road and property, whether as among the interventions and claims now filed, or which hereafter may be filed, or as between the respective interventions and claims and the bonds of the railroad company are reserved for further consideration and determination by the court.''

There was a reference to a master with authority to take proof on the claims, and the master heard the proof and made his report.

After the sale of the property to McIntyre he filed his petition in the chancery court alleging that he was owner of mortgage notes, or bonds, executed by the railway corporation in the sum of $70,000, and would, therefore, receive the greater portion of the purchase price of the property, and he asked that he be permitted to reduce his bond as purchaser to the sum of $25,000. England, the receiver of the State National Bank, indorsed his consent to the granting of that petition and stated that the facts set forth therein were true. McIntyre stated in his petition that he had ''assigned and delivered said bonds to Lloyd England, as receiver of the State National Bank, prior to the institution of said suit to enable him to sue to foreclose the petitioner's bonds, as well as to foreclose the bonds owned by himself, as such receiver, and that said Lloyd England, as such receiver, holds said bonds in trust for the petitioner.''

In the final decree the court allowed the claims of all the parties, including those of Phillips and Garanflo and Mrs. Garanflo, but decided that the original notes of the denomination of $5,000 were simple contract debts of the railway corporation, and that the holders thereof were not entitled to participation in the distribution of the assets of the company until the bonds secured by the mortgage were paid in full, and decreed that out of the proceeds of the sale certain preferred claims be paid which were prior liens (about which there was no controversy) and that the balance be applied in satisfaction of the mortgage bonds held by England, as receiver, and Phillips and Gallivan as the holders of one of said bonds, and Mrs. Garanflo as the holder of three of the bonds.

Phillips and Gallivan and Mrs. Garanflo prayed an appeal.

The contention of Phillips is that he was the holder merely in name of the shares of stock in the railway corporation, and ought to be treated as a preferred creditor of the corporation as against the other interested parties who advanced money to the corporation, not as a loan, but as an investment.

We are of the opinion that the contention of Phillips is sustained by the testimony. The testimony shows beyond dispute that Phillips became a stockholder merely as an accommodation to Garanflo, McIntyre and the Manns, at their request. He did not have the slightest interest in the affairs of the corporation, and did not become interested until he made the loan of the $10,000 at the request of Garanflo. He was in fact a creditor of the corporation, and the money he advanced was a loan, and not an investment. On the other hand, the money advanced by McIntyre, Garanflo and the Manns can, and in the court of equity where the controversy is between the stockholders and other creditors, should be treated as an investment. *American Alkali Co.* v. *Kurtz,* 134 Fed. 665.

The real controversy here is between Phillips on one hand and McIntyre on the other, and it is contended by learned counsel for appellees that those differences cannot be adjudicated here for the reason that McIntyre is not a party to the record. In this counsel are mistaken, for McIntyre made himself a party to the record by filing his petition after his purchase of the property asking that he be allowed a credit on the purchase price to the extent of the distributive portion due him on the mortgage bonds which he owned and had assigned to England merely for the purpose of bringing suit on them. His petition constituted the assertion of a claim against the assets of the corporation, and by filing a petition he necessarily made himself a party to the proceedings so as to be bound by the court's adjudication in the distribution of the proceeds of sale. All of the claimants were parties to the record, and were before the court for the

purpose of having the asserted priorities of all the creditors determined.

Again it is said that McIntyre should be treated as a creditor of the railway corporation, and not an investor in the assets of that corporation, for the reason that he was not in fact a shareholder. It is true that he was not a shareholder in name, but the proof shows beyond dispute that as a stockholder in the other corporation he was interested in the construction of the road and that he joined Garanflo and the Manns in the request that the bulk of the shares of stock be issued to Phillips so that the other corporations would not appear on the record as being interested in the railway company. McIntyre did not testify himself in the cause, and there is no denial in the record of the statements by Phillips himself and by Garanflo that McIntyre was present when Phillips was asked that the shares of stock be issued in his name and agreed to do so.

The point is made that Phillips, by the attitude he assumes in this cause, is attempting to take advantage of his own wrong in showing that he agreed to accept the shares of stock for an unlawful purpose, i. e., to permit the real owners to evade the lawful order of the Interstate Commerce Commission. That, however, is a question which the public only acting through its constituted authority can take advantage of. McIntyre and his associates, who were equally in the wrong, if a culpable act was committed at all in the transaction, are in no position to take advantage of it. The Federal authorities alone can take advantage of that situation. *England* v. *Commercial Bank of New Madrid,* 242 Fed. 813.

The remaining question with which we have to deal is whether or not the lower court was correct in deciding that the original notes were merely simple contract debts of the corporation, and that the mortgage notes or bonds, must be given priority in the distribution of the assets of the corporation. It is shown that the mortgage was intended to secure the bonds of the denomination of $1,000 each, but that the old notes were to be converted

into bonds, and that the privilege was open to Phillips as well as all other holders of the notes. The fact that Phillips did not exchange the notes does not lessen his right to claim the benefit under the mortgage, for if he had the right to so convert the notes it is still open to him and a court of equity ought to treat the conversion as having been accomplished. The other holders of the mortgage bonds cannot complain, for the mortgage itself shows that it was to secure bonds to the extent of $150,000.

It is argued by counsel for appellants that the mortgage is void as against other creditors for the reason that it was intended to secure the advances made by the real owners of the railroad as an investment. Counsel say that this constitutes a fraud on the other creditors and they rely upon the principle that where a part of the consideration for a morgtage is fictitious or fraudulent the whole instrument is void as against third parties. Counsel cite authorities sustaining that principle, but we do not think that it applies in this case as against innocent holders of the mortgage notes. Of course, it follows from what we have said that neither McIntyre nor the other parties interested in the incorporation of the railroad could make any claim under the mortgage as against other creditors. Their claims as holders of the secured notes must be subordinated to the claims of Phillips and other creditors of the corporation. England, as receiver, was entitled, however, to participation in the assets to cover his claim for the six original notes held by him, as those notes, like those of Phillips, were convertible into mortgage notes.

Mrs. Garanflo has not appeared here by counsel, and we must assume that she has abandoned her appeal.

It was alleged in the complaint of England as receiver of the State National Bank that the bank was the owner of the notes aggregating $30,000 and certain of the mortgage bonds, and this was not denied. Nor is there any contradiction in the proof except as to the notes which were assigned to the receiver by McIntyre for the

purpose of inclusion in the suit. The finding of the chancellor sustaining the claim of England as receiver in the sum of $30,000 on the six notes and in the sum of $20,000 on the mortgage bonds held by him, was therefore correct, and the receiver should, to that extent, share *pro rata*, in the proceeds of the sale.

The decree is, therefore, reversed and the cause remanded with directions to the chancery court to enter a decree distributing the proceeds of sale in accordance with this opinion.