MOHAMMED AHMED'S CASE.

RAFFAEL DIFELICI'S CASE.

Suffolk.   October 8, 1931. — January 26, 1932.

Present: RUGG, C.J., CROSBY, SANDERSON, & FIELD, JJ.

*Workmen's Compensation Act*, Costs. *Constitutional Law*, Due process of law, Equal protection of law, Police power. *Words*, "Cost."

The workmen's compensation act was enacted as an exercise of the police power.

The "cost" of a review by the Industrial Accident Board in proceedings under the workmen's compensation act, which, under St. 1930, c. 208, amending G. L. c. 152, § 10, is to be determined by the board and paid by the insurer where the review is sought by the insurer and the board in review orders the insurer to make or to continue payments to the employee, is something in the nature of court costs as reimbursement for actual expenses reasonably incurred by the employee, including reasonable counsel fees, and is not a penalty imposed upon the insurer for seeking the review; it is moderate in amount

and no more than reasonably adequate to accomplish permissible objects.

So construed, said c. 208, although it authorizes the payment of such "cost" to an employee who prevails upon the review and not to a prevailing insurer, does not deny to the insurer the equal protection of the laws nor deprive it of property without due process of law contrary to the Constitution of the Commonwealth and the Constitution of the United States, nor does it violate any other provisions of arts. 1, 10 and 11 of the Declaration of Rights.

Although the Industrial Accident Board, in reviewing, at the request of the insurer, an award of compensation for total incapacity by a single member of the board, found that the employee was only partially incapacitated and reduced the award accordingly, none of such constitutional provisions was violated by an assessment by the board upon the insurer of a certain further sum as the "cost" of the review under said c. 208.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of two decisions by the Industrial Accident Board, each awarding compensation to a claimant and also assessing costs of the review by the board under G. L. c. 152, § 10, as amended by St. 1930, c. 208.

The circumstances of such assessment of costs are described in the opinion. By order of *Qua*, J., in the first case and of *F. T. Hammond*, J., in the second case, decrees were entered in the Superior Court in accordance with the board's decisions. The insurer appealed in each case.

*R. H. Field*, (*E. Field* with him,) for the insurer.

*S. B. Horovitz*, (*B. A. Petkum* with him,) for the claimant Ahmed.

No argument nor brief for the claimant DiFelici.

RUGG, C.J. These are proceedings under the workmen's compensation act. It is not now in controversy that each employee received injuries arising out of and in the course of his employment by a subscriber under the workmen's compensation act.

The injuries of Ahmed were sustained on September 11, 1930. The board member found on December 27, 1930, that total incapacity resulted therefrom and awarded compensation accordingly. The insurer duly claimed a review. The reviewing board on April 9, 1931, affirmed and adopted the findings and decision of the single member

and, in accordance with G. L. c. 152, § 10, as amended by St. 1930, c. 208, assessed costs to cover both the cost to the injured employee of the review and reasonable counsel fees in the sum of $35, to be paid by the insurer by check made jointly to the employee and to the Boston Legal Aid Society. Decree in conformity to this decision of the reviewing board was entered in the Superior Court and the insurer appealed.

DiFelici received injuries arising out of and in the course of his employment by a subscriber on April 17, 1929. He was paid compensation under the act by agreement until June 23, 1929. Thereafter a hearing was had on the question of his subsequent incapacity. The board member found that there was total incapacity and made an award of compensation at the rate of $18 per week. Upon review, claimed by the insurer, the reviewing board found that the employee had been not totally but only partially disabled during the period in question, and reduced the award of compensation to $11.38 per week, and in accordance with said c. 208 assessed costs in the sum of $5 for expenses incurred by the employee in connection with the hearing on review, to be paid by the insurer to the employee. Decree in conformity to this decision of the reviewing board was entered in the Superior Court and the insurer appealed.

The only question argued on these appeals is the constitutionality of the statute under which costs were awarded to the employees to be paid by the insurer. That statute is St. 1930, c. 208, amending G. L. c. 152, § 10, whereby, in addition to regulation theretofore made as to procedure before the reviewing board in appeals by either party from the decision of the board member to the reviewing board, there was inserted the further provision as follows: "If a claim for a review is so filed by the insurer in any case and the board by its decision orders the insurer to make, or to continue, payments to the injured employee, the cost to the injured employee of such review, including therein reasonable counsel fees, shall be determined by the board and shall be paid by the insurer." This amending act was approved on April 11, 1930. It was not declared to be an

emergency measure. Therefore it became operative not earlier than ninety days after it had become law. *Rosenthal* v. *Liss*, 269 Mass. 373.

The workmen's compensation act of this Commonwealth (G. L. c. 152 as amended) is an elective compensation insurance law. It is compulsory upon nobody. Both the employer and the employee must elect to be bound by its terms before it is operative upon either. It is entirely optional with any insurance company whether it shall insure an employer. When these three parties, the employer, the employee and the insurer, have voluntarily come within the provisions of the act, a status is established upon which the terms of the workmen's compensation act become operative. The underlying principle of that act is that the cost of injuries sustained by those employed in industry, save those due to serious and wilful misconduct of the employee, shall be treated as a part of the cost of production. In place of common law or statutory remedy for personal injury suffered by an employee based upon negligence, a system is established whereby compensation is paid for all injuries and for death arising out of and in the course of the employment, save in certain excepted classes not here material, without regard to the fault or freedom from fault of the employer or those for whom he is responsible, whether such injury or death is sustained because of unavoidable accident, negligence of fellow servants or of third persons, negligence of the employee or assumption of risk by him, or otherwise, excepting only injuries or death caused by the serious or wilful misconduct of the employee. The compensation to be paid bears direct relation to the loss of earnings resulting from the injury. All compensation thus provided is by way of relief from inability to earn, or for deprivation of support flowing from, wages theretofore received by the employee. There is no contract between the employee and the insurer. The employee is the beneficiary of a contract between the employer and insurer. There is no direct relation between the insurer and the employee unless and until the latter suffers an injury compensable under the act. Those who do not elect to come within the scope of the act have rights and

remedies established by the common law as modified by statute, except that an employer cannot interpose as defences to an action by an employee to recover compensation for injuries received in his service assumption of risk, contributing negligence, or the fellow servant doctrine. The workmen's compensation act was a humanitarian measure enacted because of a belief that previous remedies had failed to give the adequate relief to employees for personal injuries arising out of their employment commensurate with risks demanded by modern conditions. *Gould's Case,* 215 Mass. 480, 482. *Devine's Case,* 236 Mass. 588, 592–593. *Armburg* v. *Boston & Maine Railroad,* 276 Mass. 418, 421. The workmen's compensation act is regarded as falling within the category of regulations enacted pursuant to the police power reserved to the several States. It has been held to violate no provision of the Constitution of this Commonwealth or of the United States with respect to either employees or employers. *Young* v. *Duncan,* 218 Mass. 346, 351–353. *Madden's Case,* 222 Mass. 487, 497–498. *New York Central Railroad* v. *White,* 243 U. S. 188, 207. *Mountain Timber Co.* v. *Washington,* 243 U. S. 219, 237–240. The act thus creates rights and remedies and procedure all its own, not previously known to the common or statutory law. It is operative only upon parties who voluntarily consent to come within its terms. As to those parties, it abolishes old legal rights and obligations and creates a new relation with its peculiar statutory incidents.

It is against this background of history and design of the workmen's compensation act that the statute here assailed must be interpreted and its constitutionality determined. The power to award costs here in issue does not relate to frivolous appeals. Provision for costs in frivolous appeals has existed since the original enactment of the workmen's compensation act and is found now in G. L. c. 152, § 14, a section left quite unaffected by said c. 208. The provision applies to appeals by the insurer alone. It has nothing to do with appeals by the employee and no similar provision exists as to such appeals. It relates solely to the "cost" to the employee of the review in which is expressly included

reasonable counsel fees. "Cost" in this connection is used
in a narrow sense. Compare· *Mayor & Aldermen of New-
ton, petitioner,* 172 Mass. 5, *Providence & Worcester Railroad,
petitioner,* 172 Mass. 117. It can comprehend in its largest
extent only disbursements reasonably made and actually
required. That is implied from the nature of the proceed-
ing. The board member and the reviewing board do not
constitute courts but only administrative tribunals. *Lavan-
gie's Case,* 228 Mass. 213. *Johnson's Case,* 242 Mass. 489,
493. Nevertheless, the word "cost" in said c. 208 bears a
close analogy to the "costs" as used in ordinary proceedings
in the courts. It was said in *Boynton* v. *Tarbell,* 272 Mass.
142, in connection with costs as between solicitor and client
but having a broader application, that the word "costs"
"in connection with proceedings in courts imports an
allowance to a party by way of either penalty against a
defeated party or indemnity to a victor. It is an incident
of litigation. So far as awarded to the successful party,
costs are designed to mitigate to a greater or less extent
the necessary expenses incurred in the conduct of litiga-
tion . . . . This is the nature and purpose of costs whether
founded on express statute or awarded by the courts
in the exercise of their general jurisdiction." The word
"shall" is employed to express the purpose of the General
Court as to the ascertainment of the cost by the reviewing
board and payment thereof by the insurer. Commonly
that word in a statute imports a mandatory direction and
not a precatory suggestion. *McCarty* v. *Boyden,* 275 Mass.
91, and cases cited. While possibly cases may arise where
the reviewing board may decline to act with reference to
costs, in general such determination by it is obligatory.
It hardly need be added that if on appeal to the court by
the insurer it should be decided finally that the employee
was not entitled to recover compensation, a determination
of costs to be paid by the insurer made by the reviewing
board would fall. It follows that the word "cost" as used
in said c. 208 is to be regarded as importing into the work-
men's compensation act with respect to cases contested
before the reviewing board, where the employee prevails,

the ordinary costs as there defined incidental to the procedural machinery established for the ascertainment of the amount due to an injured employee. Thus counsel fee is designated as cost and falls into that category with other items. Counsel fees are not infrequently treated as costs. *Frost* v. *Belmont*, 6 Allen, 152. *Fuller* v. *Trustees of Deerfield Academy,* 252 Mass. 258, 261, 264, where numerous cases are reviewed. *United States* v. *Equitable Trust Co. of New York*, 283 U. S. 738, 746.

Our conclusion is that the statute according to its fair construction affords something in the nature of court costs as reimbursement for actual expenses incurred by the employee and not as a penalty upon the insurer for seeking review of the decision of the board member. Other elements of expense, such as plans, have been allowed as costs. *Stewart* v. *Finkelstone*, 206 Mass. 28, 38. Travel is also a familiar item of costs.

The constitutionality of St. 1930, c. 208, was not raised, argued, or considered in *Belanger's Case*, 274 Mass. 371. It is now raised for the first time. The validity of the statute is challenged as being contrary to arts. 1, 10 and 11 of the Declaration of Rights of the Constitution of the Commonwealth and to art. 14 of the Amendments to the Constitution of the United States, because (1) it deprives the insurer of property without due process of law and (2) it denies to the insurer the equal protection of the laws. Arguments at the bar have not been based upon differences between these constitutional guarantees in the two instruments, except that those based on the cited articles from the Constitution of this Commonwealth include reference to the right to obtain justice freely and without being compelled to purchase it. We treat the cases as they have been presented by the parties. The statute is considered first in its relation to the Constitution of this Commonwealth.

It is plain that the statute provides for costs in favor of the employee, if he prevails before the reviewing board, to be paid to him by the insurer, and does not authorize the payment of costs in favor of the insurer, if it prevails. To

that extent the statute is unequal in its operation. It prefers the employee to the insurer in respect to costs. In that respect employee and insurer are not on an equal footing.

The statute here assailed makes a valid classification. It applies only to employees injured under the workmen's compensation act, an act which itself constitutes classification not open to successful attack. It affects adversely only the insurers under that act on claims for review taken by them. Laws applicable to insurance corporations alone are valid in general as to classification. *Opinion of the Justices*, 251 Mass. 569, 594, 607–615, and cases there reviewed. Liability imposed by the statute may be regarded as assumed and acquiesced in by the insurer by undertaking and continuing insurance. *Sioux County* v. *National Surety Co.* 276 U. S. 238, 242. As already pointed out, the underwriting of risks of this nature is wholly voluntary on the part of the insurer. The statute does not operate oppressively or in an arbitrary or unjust manner. It affords costs as defined to injured employees who have prevailed at a hearing before the board member, who by act of the insurer have been obliged to prosecute their claims before the reviewing board and who also prevail to the extent of recovering some compensation. One aim of the workmen's compensation act is that there be speedy ascertainment and payment of the amount due to an injured employee. The employee in the circumstances prescribed by said c. 208 is at least in misfortune, because he has received personal injuries. He may be presumed commonly to be somewhat needy. He is pitted against the insurer, who from the nature of its business has every facility for presenting its contentions before the reviewing board. Said c. 208 enlarges to a comparatively small extent the beneficent design of the workmen's compensation act already described. So far as the imposition of these costs may tend to discourage improvident claims for review by insurers, it promotes that design.

The statute does not contravene in any particular the principles as to equality before the law on which rests the decision in *Bogni* v. *Perotti*, 224 Mass. 152, and which have

been frequently followed. It is supported to some extent by *Sawyer* v. *Commonwealth*, 182 Mass. 245, and *Fairbanks* v. *Commonwealth*, 183 Mass. 373, where in the assessment of damages not required by eminent domain but granted by statute appeal to a jury was allowed to the Commonwealth and denied to the property owner. The statute does not violate our sense of fair play or equality before the law.

In the DiFelici case the award made by the board member was diminished by the reviewing board. The insurer was successful in its contentions on review to the extent that the finding of total incapacity made by the board member was reversed and a finding of partial incapacity was made. The result was that the insurer was required to pay compensation on the basis of partial, instead of total, incapacity, thereby substantially reducing the amount of its liability. The insurer was nevertheless required to pay $5 by way of costs. The amount at stake is trifling. But the constitutional principle is involved. In actions at law under our practice as established for more than a century the prevailing party is entitled to costs. Among the items of costs is an attorney's fee of $2.50 if issue is joined. The prevailing party is also entitled to a sum not exceeding $50 for printing a brief before the full court, if the case goes there. G. L. c. 261, §§ 1, 23, 25, 26, 27, as amended in the last four sections respectively by St. 1924, c. 108, §§ 1–4. The prevailing party, if the plaintiff, is entitled to such costs even though certain elements of his claim may be disallowed or reduced as a consequence of review by the full court at the instance of the defendant and the amount of the final judgment in his favor be thereby diminished. *Smith* v. *Wenz*, 187 Mass. 421, 425. *New Haven & Northampton Co.* v. *Northampton*, 102 Mass. 116. *Fratta* v. *Rossetti*, 277 Mass. 98, 101. Compare *Jewett* v. *Boston Elevated Railway*, 222 Mass. 581. We can hardly think that those provisions violate any constitutional guaranty. They have never been challenged. The principle on which these decisions rest seems to us controlling in the case at bar. The prevailing plaintiff thus in the ordinary case may get

all his costs in the full court as well as in the trial court, even though the defendant by invoking the decision of the full court may have prevailed from a practical standpoint by causing a substantial reduction in the damages ultimately assessed against him. As already decided, the scope and effect of said c. 208 are to establish payment in the nature of costs in respect to compensation awarded to an employee by the reviewing board under the workmen's compensation act. Its statutory terms, although not referring to or adopting the words of G. L. c. 261, follow the same general legislative trend. It may be necessary for an employee to incur expense or to retain counsel at a hearing before the reviewing board on the insurer's appeal even though he may not succeed in maintaining his claim to the full extent allowed by the board member.

Since said c. 208 relates solely to costs and procedure, it applies to all cases arising after its effective date. *Hollingsworth & Vose Co.* v. *Recorder of the Land Court*, 262 Mass. 45, and cases collected. *Devine's Case*, 236 Mass. 588. *Easterling Lumber Co.* v. *Pierce*, 235 U. S. 380. The contrary has not been argued by the insurer.

The present statute does not apply to judicial proceedings in the courts. It relates solely to the peculiar class of controversies as they arise under the workmen's compensation act before a purely administrative tribunal. Rights and liabilities under that act are established wholly through voluntary conduct of the parties by electing to come within its provisions. The insurer assumes no obligation save by exercising its option to enter into a contract with the employer for the benefit of the employee. The insurer is free to refuse to issue a policy. If it does issue a policy, no reason is perceived why it should not be bound by the terms of the workmen's compensation act. The liability to pay costs in the event that it prosecutes a claim for review, as a result of which the employee may recover some compensation even though reduced in amount as a result of the review, is one of the obligations voluntarily assumed by the insurer by issuing and continuing a policy of insurance to an employer. The costs imposed by said

c. 208 are in no sense a penalty for exercising a constitutional right in the courts, but only costs in the conventional sense applied to an administrative tribunal. These factors distinguish the cases at bar from all of those relied on by the insurer illustrated by *St. Louis, Iron Mountain & Southern Railway* v. *Wynne,* 224 U. S. 354; *Atchison, Topeka & Santa Fé Railway* v. *Vosburg,* 238 U. S. 56, and other cases reviewed in *Chicago & Northwestern Railway* v. *Nye Schneider Fowler Co.* 260 U. S. 35.

Every presumption is to be indulged in support of the validity of a duly enacted statute. It is to be refused enforcement only in the event that its provisions cannot be interpreted in harmony with the fundamental law. *Perkins* v. *Westwood,* 226 Mass. 268, 271.

Our conclusion is that the statute does not violate the provisions of the Constitution of Massachusetts in any of the particulars urged.

The reasons already set forth seem to us equally persuasive to the conclusion that the statute violates no rights secured by the Fourteenth Amendment to the Constitution of the United States. There are, however, further considerations bearing upon that aspect of the cases. No statute of this exact nature has been before the courts for adjudication in this Commonwealth. The constitutionality of statutes of other States of a more or less similar description has been considered by the Supreme Court of the United States.

Numerous statutes have prescribed pecuniary impositions upon common carriers when damages have been recovered in actions against them for failure to perform their duties as carriers, which were not imposed upon the plaintiff in the event of his failure to maintain his action. Those cases were reviewed exhaustively in *Chicago & Northwestern Railway* v. *Nye Schneider Fowler Co.* 260 U. S. 35. It was there said by Chief Justice Taft at pages 43–44, 45: "The general rule to be gathered from this extended review of the cases is, that common carriers engaged in the public business of transportation may be grouped in a special class to secure the proper discharge of their func-

tions, and to meet their liability for injuries inflicted upon the property of members of the public in their performance; that the seasonable payment of just claims against them for faulty performance of their functions is a part of their duty, and that a reasonable penalty may be imposed on them for failure promptly to consider and pay such claims, in order to discourage delays by them. This penalty or stimulus may be in the form of attorney's fees. But it is also apparent from these cases that such penalties or fees must be moderate and reasonably sufficient to accomplish their legitimate object and that the imposition of penalties or conditions that are plainly arbitrary and oppressive and 'violate the rudiments of fair play' insisted on in the Fourteenth Amendment, will be held to infringe it. In this scrutiny of the particular operation of a statute of this kind, we have sustained it in its application to one set of facts by the state court and held it invalid when applied to another . . . . It is obvious that it is not practical to draw a line of distinction between these cases based on a difference of particular limitations in the statute and the different facts in particular cases. The Court has not intended to establish one, but only to follow the general rule that when, in their actual operation in the cases before it, such statutes work an arbitrary, unequal and oppressive result for the carrier which shocks the sense of fairness the Fourteenth Amendment was intended to satisfy in respect of state legislation, they will not be sustained." In that case the State statute required, in the event of failure by the carrier to adjust and pay a claim for damage caused by it to property shipped over its lines and recovery for such damage against the carrier, payment of an attorney's fee by the carrier to the plaintiff, and, in the event of an appeal taken and ultimate success by the plaintiff, the payment of an additional attorney's fee. The carrier appealed and secured thereby a large reduction in the judgment from which appeal was taken. It was held that, although the first attorney's fee was justifiable, the second or additional attorney's fee could not be imposed. Statutes of a somewhat kindred although distinct character have been stricken

down in the following cases: *Gulf, Colorado & Santa Fé Railway* v. *Ellis*, 165 U. S. 150; *St. Louis, Iron Mountain & Southern Railway* v. *Wynne*, 224 U. S. 354; *Chicago, Milwaukee & St. Paul Railway* v. *Polt*, 232 U. S. 165; *Atchison, Topeka & Santa Fé Railway* v. *Vosburg*, 238 U. S. 56. Those decisions were reviewed in the opinion in *Chicago & Northwestern Railway* v. *Nye Schneider Fowler Co.* 260 U. S. 35, at pages 40–43. That review makes apparent the difference between the statutes there held invalid and the one here assailed. We do not undertake to point them out here at more length.

In upholding a similar statute, it was said in *Missouri, Kansas & Texas Railway* v. *Cade*, 233 U. S. 642, at page 650: "If the classification is otherwise reasonable, the mere fact that attorney's fees are allowed to successful plaintiffs only, and not to successful defendants, does not render the statute repugnant to the 'equal protection' clause. This is not a discrimination between different citizens or classes of citizens, since members of any and every class may either sue or be sued. *Actor* and *reus* differ in their respective attitudes towards a litigation; the former has the burden of seeking the proper jurisdiction and bringing the proper parties before it, as well as the burden of proof upon the main issues; and these differences may be made the basis of distinctive treatment respecting the allowance of an attorney's fee as a part of the costs."

The principles thus declared are to be applied to the statute here in question with respect to the facts disclosed. The statute establishes costs in the sense in which that word has become familiar in actions at law and suits in equity. The elements of costs there authorized do not go outside the principles already sanctioned respecting costs in other legal proceedings.

There are numerous decisions where statutes at least as questionable as said c. 208 have been upheld. *Atchison, Topeka & Santa Fé Railroad* v. *Matthews*, 174 U. S. 96. *Fidelity Mutual Life Association* v. *Mettler*, 185 U. S. 308, 322–327. *Farmers' & Merchants' Ins. Co.* v. *Dobney*, 189 U. S. 301. *Seaboard Air Line Railway* v. *Seegers*, 207

U. S. 73. *Yazoo & Mississippi Valley Railroad* v. *Jackson Vinegar Co.* 226 U. S. 217. *Kansas City Southern Railway* v. *Anderson*, 233 U. S. 325. *Iowa Life Ins. Co.* v. *Lewis*, 187 U. S. 335, 355. *Manhattan Life Ins. Co.* v. *Cohen*, 234 U. S. 123, 136–137. *Missouri, Kansas & Texas Railway* v. *Harris*, 234 U. S. 412, 415. *Sioux County* v. *National Surety Co.* 276 U. S. 238. *Dohany* v. *Rogers*, 281 U. S. 362, 368. *McMullin* v. *Doughty*, 2 Robb. (N. J.) 776, 781. *Reed* v. *American Bonding Co.* 102 Neb. 113. *Chicago & Western Indiana Railroad* v. *Guthrie*, 192 Ill. 579. *Griffith* v. *Maxwell*, 20 Wash. 403. *Thompson* v. *Wise Boy Mining & Milling Co.* 9 Idaho, 363. *Title Guarantee Co.* v. *Wrenn*, 35 Ore. 62, 70.

The statutes under review in all these decisions and especially in those of the Supreme Court of the United States go further than the one here assailed. In those statutes the inequality as to recovery of attorney's fees and other impositions upon one party and not upon the other applied to proceedings in courts where it could be strongly argued there ought to be absolute equality. That argument has prevailed in several States where statutes of similar nature have been denied enforcement. It is not necessary to review or analyze those decisions because we regard it as plain that the decisions of the Supreme Court of the United States already discussed or cited uphold the validity of said c. 208 against all contentions grounded on the Fourteenth Amendment. The costs recoverable under that statute are moderate in amount, are not in the nature of a penalty and are no more than reasonably adequate to accomplish permissible objects, such as discouragement of unnecessary claims for review by insurers and something toward reimbursement of necessary expenses of an unfortunate employee ultimately prevailing to some extent.

The argument of the insurer has been directed chiefly to the contention that the operation of the statute here assailed is to produce inequality before the law. Our conclusion is that it does not violate that constitutional guaranty. The argument that it deprives the insurer of its property without due process of law has not been sepa-

rated from the argument as to inequality before the law and is not definite and direct. We are unable to discern any invalidity on that ground. There is nothing in the statute violative of the articles in our Declaration of Rights to which reference has been made. This decision is confined to the points argued.

In each case the entry may be

*Decree affirmed.*