500 F.2d 1291
 OVERSEAS AFRICAN CONSTRUCTION CORP., Employer, and St. Paul
Mercury Insurance Co., Carrier, Appellants-Cross Appellees,
v.
Eugene McMULLEN, Deceased, by George McMullen, Executor, and
John D. McLellan, Jr., Deputy Commissioner, United States
Employees Compensation Commission, Second Compensation
District, Appellees-Cross Appellants.
 Nos. 948, 1064 and 1108, Dockets 74-1092, 74-1103 and 74-1538.
 United States Court of Appeals, Second Circuit.
 Argued May 17, 1974.
Decided July 5, 1974, Rehearing and Rehearing En Banc Denied
July 23, 1974.
 
 Irwin B. Silverman, Brooklyn, N.Y., (Jacowitz & Silverman, P.C., Brooklyn, N.Y., of counsel), for appellants-cross appellees.
 Angelo C. Gucciardo, New York City (Israel, Adler, Ronca & Gucciardo, New York City, of counsel), for appellee-cross appellant McMullen.
 Joshua T. Gillelan II, Atty., Dept. of Labor, Washington, D.C. (William J. Kilberg, Sol. of Labor, James G. Johnston, Asst. Sol. of Labor, George M. Lilly, Washington, D.C. of counsel), for appellee-cross appellant McLellan.
 Before MEDINA, HAYS and OAKES, Circuit Judges.
 OAKES, Circuit Judge:
 
 
 1
 The principal appeal is by St. Paul Mercury Insurance Co. (St. Paul) on behalf of itself and Overseas African Construction Corp. (Overseas African). St. Paul questions the jurisdiction of the deputy commissioner, United States Employees Compensation Commission, to make a $12,495.50 award,[1] handed down June 22, 1972, on the behalf of claimant Eugene McMullen (claimant), a former employee of Overseas African, who died some five months prior to the awards being made. Jurisdiction was assumed and the award made by the deputy commissioner under the Defense Base Act, as amended, 42 U.S.C. 1651 et seq. (the 'Act'),[2] which applies the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. 901 et seq. (LHWCA), to certain types of employees. The deputy commissioner and the estate of the claimant have taken a cross appeal in connection with the district court's refusal to assess attorney's fees against St. Paul.
 
 
 2
 St. Paul filed its action to set aside the award on July 21, 1972, pursuant to 33 U.S.C. 921. In a memorandum opinion and order dated November 21, 1973, on cross motions for summary judgment, the district court dismissed St. Paul's challenge to the award and affirmed the award in claimant's favor. The court also imposed a statutory penalty on St. Paul under 33 U.S.C. 914(f).[3] The court also denied claimant's demand for payment by St. Paul of his legal fees spent in prosecuting his claim, a claim apparently based solely on 33 U.S.C. 926, saying that the basis for St. Paul's appeal was not so 'frivolous or malicious' as to require such an assessment. The court did not comment on the possible impact of an amendment to 33 U.S.C. 928-- which had become effective on November 26, 1972[4] -- on the question of assessing legal fees against St. Paul. On November 30, 1973, claimant's counsel wrote a letter to the district court which pointed out the possible relevance of the amended version of 928 to the question of legal fees. The court, treating the letter as a motion to reargue, adhered to its prior determination (which had reached the question of attorney's fees under 926 but not 928) and assessed legal fees in the sum of $1,800 against the claimant's estate under 928 as it existed prior to its amendment.
 
 
 3
 The claimant was hired in New York by Overseas African and was assigned to a project at Chisimaio, Somalian Republic, Africa, during the period from May, 1968, to December, 1968, as project manager and chief accountant.[5] The project was under the general supervision of the United States Army Corps of Engineers, which approved for acceptance the various parts of the construction project as they were completed. The project was funded by AID, the Agency for International Development, United States Department of State. The funds came from 'Chisimaio Port and Municipal Facilities Loan No. 649-H-002 (Chisimaio loan).' While working on this project, claimant contracted a skin disorder, diagnosed as neurodermatitis, which eventually forced his return to the United States and which all parties concede to be a legitimate basis for the compensation awarded by the deputy commissioner and approved by the district court. Claimant's death on January 30, 1972, from unrelated causes, came about five days after the hearing on his claim before the deputy commissioner.[6] There is no dispute whatsoever that claimant was temporarily totally disabled and, if the Act conferred jurisdiction on the deputy commissioner, was entitled to the award which was made together with the penalty assessed by the district court.[7]
 
 
 4
 The claim of St. Paul is that the deputy commissioner and the court below were without jurisdiction to enter an award and judgment respectively under the Defense Base Act. The claim is evidentially based solely on a letter from AID bearing a date of February 22, 1972, which is set forth in the margin.[8] The district court affirmed the deputy commissioner's finding that this letter did not overcome the statutory 'presumption' of jurisdiction.[9] St. Paul argues that the construction contract was between the employer and the Republic of Somalia, and that while it may have been approved and financed by the United States, there is an exception as a matter of law to jurisdiction of employees' compensation claims under the Defense Base Act as amended, 42 U.S.C. 1651(a) (5), in the case of projects financed from the Development Loan Fund. Section 1651(a) does state that
 
 
 5
 the provisions of the Longshoremen's and Harbor Workers' Compensation Act . . . shall apply in respect to the injury or death of any employee engaged in any employment . . . (5) under a contract approved and financed by the United States or any executive department . . . or agency thereof . . . where such contract is to be performed outside the continental United States, under the Mutual Security Act of 1954, as amended (other than title II of chapter II thereof unless the Secretary of Labor, upon the recommendation of the head of any department or other agency of the United States, determines a contract financed under a successor provision of any successor Act should be covered by this section) . . ..
 
 
 6
 St. Paul's argument is, then, that since title II of chapter II of the Mutual Security Act of 1954 established a Development Loan Fund as an agency of the United States and body corporate authorized to make loans to promote the economic development of underdeveloped friendly countries, and since the letter from AID says that the work performed by Overseas African was 'totally financed on a development loan basis,' the work here was not work to which the Defense Base Act and the LHWCA extended.[10]
 
 
 7
 Apparently this highly technical argument is a bit of an afterthought, for both the employer and St. Paul thought that the Chisimaio project was a Defense Base Act project and respectively sought and supplied insurance coverage in relation to it. The contract of employment between Overseas African as employer and Mr. McMullen, the employee, provided that the employer would
 
 
 8
 procure and pay the premiums for such compensation insurance as will accord to Employee . . . the statutory benefits for death or injury to which the Employee may be entitled under the applicable Federal law of the United States including but not limited to the Defense Base Act and War Hazards Compensation Act. Said workmen's compensation insurance shall also include coverage of Employee for illness due to endemic diseases of Somalia . . ..
 
 
 9
 St. Paul's policy originally had provided in Section 2, Coverage A,
 
 
 10
 The company agrees to pay voluntarily on behalf of the insured, to the employees defined in Section 1 of this endorsement, the compensation, medical and other benefits specified in the Workmen's Compensation Law and Occupational Disease Law of the state designated in Item 3 of the declarations (New York) in the same manner as if such employees were covered under the provisions of said law or laws.
 
 
 11
 By endorsement the policy was amended to read 'Policy includes employees working in Chisimaio, Somalia (estimated at eleven)' and another endorsement provided rather cryptically, 'It is understood and agreed that Public Law 208 benefits apply as respects the A.I.D. Projects only.'[11] 'Public Law 208' is the Defense Base Act.
 
 
 12
 Certainly a prima facie showing of federal jurisdiction in this case is made out by the contract of insurance itself, especially in light of the apparently successful argument of St. Paul-- after claimant had originally proceeded in the New York state courts to attempt to establish compensability under the relevant state statutes-- that a federal forum was the appropriate one for resolution of the dispute. A strong argument can be made that St. Paul should be estopped from challenging federal jurisdiction over the dispute, or from raising the point that, as a factual matter, the contractual relationships involved a specific exception to jurisdiction over a dispute that is otherwise clearly a federal matter. Without rendering our decision on this basis. We would nevertheless remark that St. Paul's actions during the course of this dispute can and should be weighed in connection with whether it has overcome the statutory presumption of jurisdiction.
 
 
 13
 So doing, we agree with the deputy commissioner and with the court below that the AID letter of February 22, 1972, is insufficient to overcome the statutory presumption of jurisdiction. The rule, of course, is that so long as any reasonable inference from the facts supports jurisdiction under the statutory presumption that jurisdiction may be found. Cardillo v. Liberty Mutual Insurance Co., 330 U.S. 469, 474, 67 S.Ct. 801, 91 L.Ed. 1028 (1947); Michigan Mutual Liability Co. v. Arrien, 344 F.2d 640, 645-646 (2d Cir.), cert. denied, 382 U.S. 835, 86 S.Ct. 80, 15 L.Ed.2d 78 (1965). But see Employers Mutual Liability Inssurance Co. v. Arrien, 244 F.Supp. 110, 113 (N.D.N.Y.1965) (distinction between presumption of coverage and presumption of jurisdiction). The AID letter does not indicate the relationship between the parenthetical exclusion in 1(a)(5) of the Defense Base Act, 42 U.S.C. 1651(a)(5), and the assertion that Overseas African's contract 'was totally financed on a development loan basis.' St. Paul did nothing to prove that relationship before the deputy commissioner, before the court below, or before us. For all that appears before us there are other foreign assistance act loans, and there are other forms of development loans than those made from the Development Loan Fund.
 
 
 14
 Thus it becomes unnecessary for us to pass upon the deputy commissioner's assertion that this contract was covered by 42 U.S.C. 1651(a)(4),[12] or to pass upon the claim of the claimant's estate that, because the employer appeared and conceded jurisdiction and under 33 U.S.C. 935 the jurisdiction of the employer 'shall be jurisdiction of the carrier,' the concession of the employer is ipso facto the concession of the carrier.
 
 
 15
 We pass then to the question of attorneys' fees. To recapitulate, the deputy commissioner approved a fee of $2,500 for the services of the claimant's attorney and directed that this be paid out of the total award. The district court fixed the value of the claimant's estate's attorneys' services at $1,800 in addition thereto, and directed that this also be paid by the executor out of any funds received by him. These awards were clearly authorized by 33 U.S.C. 928 as it existed prior to its amendment. On cross appeal here the deputy commissioner and the claimant's estate raise two arguments concerning who should pay these fees. The first argument is that the district court erred in not finding that all counsel fees in that court should be chargeable to St. Paul by virtue of 33 U.S.C. 926, which allows for the imposition of all costs upon a party that institutes or continues proceedings relative to workmen's compensation 'without reasonable ground . . ..' The second argument is that at least those legal expenses incurred by claimant's estate after November 26, 1972, are recoverable against St. Paul irrespective of whether 'reasonable grounds' existed for St. Paul's resistance to the claim under the provisions of 928 as amended.[13]
 
 
 16
 Considering first the argument under 926, as it relates to legal fees in the district court, we believe the following factors to be determinative in claimant's favor. On the appeal from the deputy commissioner's order to the district court, St. Paul raised several issues concerning the award in its pleadings-- the usual stock defenses in such cases-- but pressed only the jurisdictional issue. The district court found the jurisdictional issue to be the 'only serious issue' before it but, after stating that both St. Paul and Overseas African 'both regarded the Chisimaio project as within the Defense Base Act . . .,' held that the jurisdictional argument was neither 'frivolous nor malicious.' With that we may agree, but compensation acts generally and the LHWCA specifically contemplate the voluntary payment of compensation to the claimant upon receipt of notice of disability or injury. Here, legal proceedings were held before the New York State Workmen's Compensation Board where, for all practical purposes, they were adjourned because of St. Paul's refusal to 'waive' its 'admiralty or interstate commerce rights and remedies,' before the United States Employees Compensation Commission. For its own reasons, St. Paul resisted the jurisdiction of the deputy commissioner, the district court and now this court, even though there has never been any serious claim that the claimant (or his estate) was not entitled to relief at all times. The only claim consistently advanced by the carrier has been that relief has not been sought in the proper forum. On the facts, and in light of the policy for expeditious payment of claims, we feel the jurisdictional claim to be so insubstantial as to require the carrier to bear the expense of the legal fees in the district court, and the judgment of the district court in this respect is reversed.
 
 
 17
 Legal fees in this court, which we set at $2,000.00, we find to be governed by the provisions of 33 U.S.C. 928(a) & (c) as amended. Under 928(a), a claimant, whose claim is resisted by a carrier, who successfully prosecutes that claim has an absolute right to recover his legal expenses incurred in that prosecution. The only serious dispute involving 928(a) is whether, as a statutory matter, Congress intended that section to apply to cases pending in any forum on November 26, 1972 (the effective date of the amendments), and, if so, whether there be any constitutional impediment to such an application. These questions need not detain us long. In Virginia Hotel Co. v. Mills, BRB No. 133-73 (Ben Rev. Bd. Apr. 2, 1974), the Benefits Review Board of the Department of Labor, which, under 33 U.S.C. 921(b)(3), replaces the district court for purposes of appealing a compensation order, held that the absence of any legislative history to the contrary indicated congressional intent that the amendments-- here involving procedural and remedial aspects of workmen's compensation disputes-- should be applied to pending proceedings. There being no savings clause in the amendments, we fully concur with the Mills decision on this point. As was said by the Supreme Court in Sampeyreac v. United States, 32 U.S. (7 Pet.) 222, 238, 8 L.Ed. 665 (1833), 'Almost every law, providing a new remedy, affects and operates upon causes of action existing at the time the law is passed.' See Ahmed's Case, 278 Mass. 180, 179 N.E. 684 (1932). Cf. Bradley v. Richmond School Board, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). See generally 3 A. Larson, The Law of Workmen's Compensation 83.12, 83.17 (1973). As for any constitutional objections to such retrospective application of 928(a) as is involved here, objections not raised directly by St. Paul in its briefs, we agree with the Mills decision to the effect that the date the right of action accrued has no constitutional significance. As of November 26, 1972, St. Paul was on notice that 928(a) as amended might be applied to its case respecting legal fees should St. Paul fail to prevail on its appeal in both the district court and on further appeals it might choose to take.[14]
 
 
 18
 For the reasons stated herein, the judgment of the district court to the extent that it affirmed the award of the deputy commissioner is affirmed; so much of the district court's judgment as denied claimant's entitlement to legal fees in that court is reversed and the cause remanded to the district court for entry of an order directing St. Paul to make good those expenses. Legal fees assessed in this court are to be paid in accordance with this opinion.
 
 
 
 [1]
 The award was for $11,250.00 on the basis of $70.00 per week from January 1, 1969, to January 30, 1972, plus $1,245.50 for documented medical expenses incurred during this period. A fee of $2,500.00 for claimant's attorneys was fixed by the deputy commissioner to be paid out of the compensation awarded
 
 
 [2]
 This Act was adopted to extend coverage to employees working on defense bases including originally particularly those acquired from Great Britain on a lend-lease basis. See Republic Aviation Corp. v. Lowe, 164 F.2d 18 (2d Cir. 1947) (Chase, J.), cert. denied, 333 U.S. 845, 68 S.Ct. 663, 92 L.Ed. 1128 (1948). As such it was a 'remedial act' to be 'interpreted to accomplish so far as is possible the purposes for which it was intended.' Id. at 20
 
 
 [3]
 Under 14(f) of the LHWCA, if payment of an award is not timely made (within 10 days) and no stay is sought or granted, a 20 per cent penalty 'shall be imposed' by the district court. 33 U.S.C. 914(f). Thus, the total amount of the award before this court is $14,994.60
 
 
 [4]
 Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, Pub.L. No. 92-576, 13, 86 Stat. 1251, 1259, 1265
 
 
 [5]
 Overseas African was a wholly owned subsidiary of Reynolds Construction Co., which was the original overseas contractor for this project and to which the insurance policy originally underwritten by St. Paul ran as insured. The contract between the Somalian Republic and Reynolds was assigned by the latter to Overseas African and, by endorsement to the St. Paul-Reynolds insurance policy, it was agreed that the name of the insured was amended to include the interests of Overseas African
 
 
 [6]
 On August 21, 1969, claimant settled a claim under a separate policy, #GR 1018, with AFIA-St. Paul Mercury Insurance Co., Overseas African and/or Reynolds, for $1,800.00. This policy involved compensation under the rubric of 'Non-occupational Sickness Weekly Indemnity Benefits' and was found by the deputy commissioner to have no bearing on claimant's rights under the Defense Base Act
 
 
 [7]
 With $2,500.00 fixed as attorneys' fees by the deputy commissioner and $1,800.00 by the district court, as the case comes to us $4,300.00 is chargeable against the overall recovery of $14,994.60 exclusive of any fees which might be awarded in this appeal
 
 
 [8]
 The pertinent portion of the letter is as follows:
 The following information is supplied in response to your inquiry to Mr. Barry Wallace concerning Overseas African Construction Corporation's work on the Chisimaio Port project. The work performed by Overseas African was totally financed on a development loan basis. The applicable loan is designated as Chisimaio Port and Municipal Facilities Loan No. 649-H-002.
 
 
 [9]
 In any proceeding for the enforcement of a claim for compensation under the LHWCA 'it shall be presumed, in the absence of substantial evidence to the contrary-- (a) that the claim comes within the provisions of this chapter.' 33 U.S.C. 920
 
 
 [10]
 The original statute establishing the Development Loan Fund as a corporate agency was repealed by the Foreign Assistance Act of 1961, Pub.L. No. 87-195, pt. III, ch. 3, 642(a)(2), 75 Stat. 460. That act established a new 'Development Loan Fund' to be used by the President to make loans pursuant to the authority contained in the Act and the new fund provisions are set forth in 22 U.S.C. 2161-2169 inclusive. Technically speaking, there is no longer any title II, chapter II, exception of the Mutual Security Act of 1954 as amended, 42 U.S.C. 1651(a)(5), but the Development Loan Fund referred to in 22 U.S.C. 2161-2169 must be read as continuing the exception to 42 U.S.C. 1651(a)(5), since 642(b) of the Foreign Assistance Act of 1961, 75 Stat. 460, provided that
 References in law to the Acts, or provisions of such Acts, repealed by subsection (a) of this section shall hereafter be deemed to be references to this Act or appropriate provisions of this Act . . .,
 and since old title II, chapter II, was replaced by the similar provisions of pt. I, ch. 2, title I of the 1961 Act (comprising 201-205), 75 Stat. 426-427, now as amended, 22 U.S.C. 2161 et seq.
 
 
 [11]
 We say 'cryptically,' because it is now claimed by the insurer that the case falls within an exception to the Public Law 208 benefits because it was an AID 'development loan' project
 
 
 [12]
 Since the contract appears to have been executed solely by the Republic of Somalia and not by the United States as a party, it would not appear to fall within the provisions of 42 U.S.C. 1651(a)(4). However, it is on a federal form and apparently a federal 'contracting officer' approved the assignment from Reynolds Construction Co. to Overseas African
 
 
 [13]
 Section 928(a), as amended, reads as follows:
 If the employer or carrier declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner, on the ground that there is no liability for compensation within the provisions of this chapter, and the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim, there shall be awarded, in addition to the award of compensation, in a compensation order, a reasonable attorney's fee against the employer or carrier in an amount approved by the deputy commissioner, Board, or court, as the case may be, which shall be paid directly by the employer or carrier to the attorney for the claimant in a lump sum after the compensation order becomes final.
 
 
 [14]
 Thus, if our judgment on the 926 issue with respect to legal fees in the district court should be found erroneous by the Supreme Court, claimant's estate would still be entitled to recovery of any legal expenses incurred in the district court after November 26, 1972, should our view of 928(a) be sustained. We reach the 928(a) question because we feel that the claim for legal fees made in this court should be decided under 928(a), even though our views with respect to legal fees under 926 in the district court would be equally applicable to fees in this court. The rationale for this position is that we see the 1972 Amendments to the LHWCA as superseding 926 in that they provide for the first time what is clearly a congressional preference that attorneys' fees not diminish the recovery of a claimant regardless of how close a case might be which is litigated but finally lost by a carrier. This appeal, because it was perfected after the effective date of the 1972 Amendments, should therefore be decided on the law most clearly applicable at that time