EMERSON, Respondent, vs. OLD LINE LIFE INSURANCE COMPANY OF AMERICA, Appellant.

*April 7—May 11, 1926.*

*Insurance: Accident insurance policy: Notice of injury: Delay:*
· *Advice of physician: Good faith: When insured is under care of physician.*

1. Where an insured under an accident insurance policy slipped in throwing a baseball and thereafter suffered continuous pain, but in good faith, on the advice of reputable physicians that appendicitis was the cause of the pain, refrained from sending notice of the injury to the company insuring him against accident until advised, three months later, that the accident was the cause of the pain, it is *held* that the evidence sustained a finding that such notice complied with the provisions of a policy requiring notice of the injury within twenty days of the accident or as soon as reasonably possible. p. 174.
2. Evidence that the insured was under the charge of a physician and bandaged himself every morning is *held* to sustain a finding that there was compliance with a provision of the policy requiring treatment by a physician at least once in each seven days.  p. 174.

APPEAL from a judgment of the circuit court for Pepin county: GEORGE THOMPSON, Circuit Judge. *Affirmed.*

Plaintiff carried an accident insurance policy in the defendant company at the time of his injury, August 10, 1924. He was about twenty-eight years of age, in good health and of sound mind.  He ran a barber shop and also a small confectionery establishment in connection therewith.  Upon August 10, 1924, he acted as catcher in a baseball game played at Red Wing, Minnesota.  When in the act of throw-

ing a ball to second base he slipped, fell, and strained himself. The strain was localized in his body, extending from the right kidney diagonally to the crotch. It immediately produced a violent pain so serious as to be nauseating and to require him to stop playing ball and to lie down to rest. The pain continued in exactly the same region uninterruptedly and disabled him from driving his automobile home that evening. It continued without interruption, although not quite so severe, and prevented him from performing the duties of his occupation until the time of the trial. He testified that he had never experienced a pain of this kind before and that he believed it came directly from the strain of the accident and caused the disability. About a week or so after the accident he went to Dr. Gerholt of Maiden Rock and took along a blank notice of injury and asked the doctor to fill it out so that he could send it to the company. He testified that the doctor advised him that his condition came from appendicitis and that the company would laugh at him if he made a claim for recovery under his accident policy. He refrained from sending in the blank and made no effort to give any kind of notice to the defendant until November 24th, when he notified them in writing of his injury. After seeing Dr. Gerholt he consulted Dr. Brookie, who made no change in the diagnosis of his case. About the middle of September he consulted Dr. Anderson, who thought the pain and disability resulted from appendicitis, but was evidently in doubt, as he advised the plaintiff to go to the Mayo clinic at Rochester. While consulting the doctors mentioned a swelling developed just over the appendix and at the seat of the strain and pain. This swelling gradually continued getting larger and a considerable quantity of pus was passed off. During the time he was under the care of these three doctors the pain continued uninterruptedly and with about the same severity and in exactly the same region. None of them were able to give him any relief. He arrived

at the Mayo clinic on October 17th and was operated on October 18, 1924. His appendix was removed and it was discovered that there was an abscess of the right kidney which needed to be drained. The kidney had to be reached through an incision in the back, so he remained in the hospital until October 30th, at which time the incision was made and the abscess drained. Plaintiff left the Mayo clinic about November 23d. Since he left the hospital he was unable to take care of his business. His disability was due to a heavy drainage of pus, which seemed to increase when he worked. This drainage of pus continued until the date of trial. On November 23d, on suggestion of one of the doctors at the Mayo clinic, he submitted a history of his case to the kidney specialist of that institution and the latter advised him that in his opinion the condition of the kidney resulted from the accident of August 10th. The next day plaintiff mailed a notice of injury to the defendant. This notice stated among other things: "I had three different doctors at home, but they all were sure it was something else, so I really did not know what was the trouble with me until October 18th." The court found that the notice was given in compliance with the provisions of the policy and that plaintiff was entitled to full indemnity for a certain period of time and for partial disability for the remainder of the period up to the time of trial. A judgment was entered accordingly, and the defendant appealed.

For the appellant there was a brief by *Olwell & Brady* of Milwaukee, and oral argument by *Bernard V. Brady.*

For the respondent there was a brief by *E. S. Pattison* of Durand and *White & White* of River Falls, and oral argument by *F. M. White* and *E. S. Pattison.*

VINJE, C. J. As to notice the policy provided:

"Written notice of injury on which claim may be based must be given to the company within twenty days after the

date of the accident causing such injury. . . . Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice, and that notice was given as soon as it was reasonably possible."

The case presents the question whether an injured person who has had an accident resulting in an internal injury may rely upon representations by reputable doctors that his injury or pain and suffering were not caused by the accident, though he himself, up to the time of receiving medical advice, believed his condition due to the accident. When it is borne in mind that notice is required to be given the insurer not only for the purpose of advising it that an injury has occurred but for the purpose of enabling it to ascertain whether other provisions of the policy calling for medical treatment are complied with, it is difficult to come to the conclusion that the insured is not justified in following the advice of reputable physicians whom he seasonably employs. There can be no claim in this case that plaintiff did not honestly believe his doctors as to the cause of his ailment after they examined him and gave their opinion. Nor can there be any claim that he did not employ reputable doctors. Even the Mayo clinic, upon the first examination, believed he was suffering from appendicitis. It was no doubt one of those by no means rare cases that could not be definitely determined till the patient was opened up. It appears that the next day after plaintiff was informed that his injury was due to the accident he gave written notice thereof. The fact that he stated that he did not know the nature of his injury till October 18th does not contradict the fact that he did not learn till November 23d that the injury was due to the accident.

In *Sheafor v. Standard Acc. Ins. Co.* 170 Wis. 307, 174 N. W. 916, it was at least inferentially held that the insured having an accident may, upon his doctor's advice, properly

delay giving notice of injury. The case at bar differs from the one just cited in that at and from the time of the accident the insured believed he had been seriously injured by his throw, wrench, and fall, while in the *Sheafor Case* he did not realize that there was any serious injury till a long time later, so the two depend upon different facts as to the excuse for the delay in giving the notice. Here the insured could and would have given timely notice but for the medical advice given him. As soon as it was ascertained by an operation that the advice was wrong and he was informed of the error he sent the notice.

It is admittedly to the interest of the insurer that the insured should seek early medical aid after an injury. If he does so and is advised by reputable physicians that his injury is not referable to the accident, it would be strange to say that he cannot rely upon their opinion but must use his own. It is idle, useless, and expensive to consult doctors if you do not intend to follow their advice where there is nothing obviously wrong about it. If the condition of the injured person presents a fair case for medical judgment and that is honestly given by a reputable doctor, it justifies the insured in following it. For cases treating of this subject and tending to sustain the conclusions reached, see 7 A. L. R. 186, note, and especially on page 190.

In *Hefner v. Fidelity & Cas. Co.* (Tex. Civ. App. 1913) 160 S. W. 330, by a vote of two to one, the court held under the facts of the case that the notice was too late. But there it was not given till ten months after the accident. The insured stepped into a hole in the nighttime, fell, and received a severe strain or wrench. It appeared that at least two months before he gave notice he was informed by doctors whom he consulted that his injury was due to a strain or wrench. His main excuse for not sending notice was that he hoped he would get better, and he employed a number of doctors before he sent notice and finally lost the

use of his legs. The case at bar differs materially from the one just cited, and, a jury having been waived, a finding by the court that the notice was given within the provisions of the policy cannot be set aside.

The policy also contained this condition: "Provided that indemnity is payable under this part only for such period as the insured is under the regular treatment of a legally qualified physician or surgeon at least once in each seven days."

It is claimed that this condition of the policy was not complied with after he left the Mayo clinic. The plaintiff testified that he had been under the charge, direction, and treatment of Dr. Masson, of the Mayo clinic, from the time he left it in January up to the time of the trial, and that he, plaintiff, bandaged himself every morning, and that pus had flowed from the time he left the hospital up to the time of the trial. There is no evidence to the contrary. We think the trial court was justified in finding that there had been a compliance with the quoted portion of the policy.

*By the Court.*—Judgment affirmed.