## No. 11,333.

MULVIHILL *v.* FIRST NATIONAL BANK OF ARVADA.

Decided July 6, 1926.

Action on promissory note. Judgment for plaintiff.

*Reversed.*

1. CORPORATIONS—*Stock—Pledge.* A pledge of corporate stock is invalid unless a memorandum be made on the books of the company in compliance with section 2268, C. L. '21.

2. PLEDGE—*Corporate Stock—Duty of Pledgee.* A bank having received a certificate of corporate stock as collateral security, has the duty of procuring a memorandum thereof to be made on the books of the company, as the only means of preserving the pledge from loss to itself or to the surety.

3. *Pledgee—Trust Relation.* A bank as pledgee of corporate stock is a trustee of the pledge for all parties interested therein.

4.  BILLS AND NOTES—*Collateral Security—Pledge.*  Where the nature of collateral security requires something to be done at once by the creditor to make it a valid security, the law implies an agreement on his part to perform that act, the omission of which is such gross negligence on the part of the creditor toward the surety as will operate to discharge the latter at least to the extent of the loss occasioned by such negligence.

5.      *Attorney Fee for Collection.*  Although a promissory note provides an attorney fee for collection, the allowance of such a fee is error, in the absence of proof that the holder of the note paid or obligated itself to pay an attorney fee.

*Error to the District Court of Jefferson County, Hon. Samuel W. Johnson, Judge.*

Mr. CHARLES A. STOKES, Mr. JESSE H. SHERMAN, for plaintiff in error.

Mr. FRANK B. GOUDY, Mr. FRANK L. ROSS, for defendant in error.

*Department Two.*

MR. JUSTICE WHITFORD delivered the opinion of the court.

THE First National Bank of Arvada had judgment against Frank E. Mulvihill, plaintiff in error, and John J. Dreier upon a promissory note for $1,557.80. Mulvihill brings the case here for review on error.

The note contains the following provisions: "And there is hereby and herewith, by and for the undersigned, delivered, pledged and deposited as collateral security for the payment of this note, and also all other present or future demands of any and all kinds, and of every nature whatsoever, of the holder thereof against the undersigned, now owing or which may hereafter be owing, and whether now or hereafter contracted, the following property, viz: Certificate No. 123 for three shares of the capital stock of the Farmers Reservoir and

Irrigation Co., with the right, power and authority in the holder hereof to sell  *  *  *  without advertising same, and without notice of intention to sell, or of the time or place of sale  *  *  *  and in the event of any sale or purchase hereunder, no matter by or to whom made, all notice thereof is hereby expressly waived.  *  *  *

"As to all shares of stock hereby pledged, the holder hereof, during existence of pledge, may have entry of transfer thereof in pledge made upon the books of company, or entry of such transfer and the issuance of new certificates to holders hereof as pledgee, as may be necessary or desired  *  *  *  and if placed in the hands of an attorney agree to pay a reasonable attorney's fee for collection thereof."

Mulvihill in his answer admitted the execution of the note and the nonpayment, and alleged that the note was given for money loaned by the bank to Dreier to purchase the stock described in the note; that the stock was purchased by Dreier with the money so borrowed from the bank and pledged by Dreier as security for the note; that the bank at all times knew that Mulvihill received no portion of the consideration; that Mulvihill, at the request of both Dreier and the bank, signed the note as surety for Dreier, and that as surety for Dreier he is entitled to be subrogated to the bank upon the payment of the pledge.

Mulvihill further alleged that the bank failed to have the stock transferred upon the books of the company; that it failed to give notice of the pledge to the irrigation company or make a memorandum of the pledge upon the books thereof, and that before maturity of the note the stock was levied upon by the sheriff and sold under execution by one Sherwood, a judgment creditor of Dreier, and to the extent of the value of the security thus lost, Mulvihill pleaded a release from liability upon the note.

It seems that Dreier in 1918 borrowed money of the bank with which to purchase three shares of water stock

of one Heath, which stood in Heath's name upon the books of the Farmers Reservoir and Irrigation Company. The bank, as a part of the transaction, requested Dreier to pledge to it the three shares of stock so purchased, as collateral security, and also requested Mulvihill to sign the note with Dreier, as an accommodation maker. The transfer to Dreier of the stock was executed by an endorsement in blank by Heath and delivery was made to the bank by Dreier in that form. Dreier on several occasions requested the bank to have the stock transferred upon the books of the irrigation company, which the bank failed to do until April, 1924, which was after the levy by the sheriff of the execution. The note was many times renewed between 1918 and 1924. Some time after the sale of the stock by Heath to Dreier the secretary of the irrigation company made a memorandum upon the records of the company to the effect that Heath had given verbal information to the company that he had sold his certificate for three shares of stock to J. J. Dreier. In January, 1924, an execution was issued on a judgment against Dreier, by virtue of which the sheriff levied upon and sold these three shares of stock standing in the name of Heath on the books of the Irrigation Company as the property of Dreier, and thereafter executed a sheriff's certificate of sale therefore to the purchaser.

Dreier became insolvent and had no property subject to execution. Mulvihill claimed the right of subrogation and offered to pay the note, but demanded that the bank deliver to him three shares of stock of the Irrigation Company, or that he be given credit upon the note in the amount of $750, the admitted value of the three shares of stock. The bank tendered to him the stock certificate for three shares in its possession, which Mulvihill refused to accept, as not evidencing three valid shares of stock such as were pledged to it at the time he became an accommodation maker.

Section 2268, C. L. 1921, relating to the registry of transfers and pledges of shares of capital stock of Colo-

rado corporations, provides, among other things: "No transfer of stock shall be valid for any purpose whatever, except to render the person to whom it shall be transferred, liable for the debts of the company, according to the provisions of this act, unless it shall have been entered therein as required by this section, within sixty days from the date of such transfer, by an entry showing to and from whom transferred; or, in case of the pledge of any such stock, a memorandum be made upon the books of said company, showing to whom and for what amount the stock has been pledged."

It is clear that the pledge of the three shares was lost, by reason of the failure to make a memorandum of the pledge upon the books of the irrigation company within the statutory period of sixty days. The bank contends that no duty rested upon it as pledgee to make a memorandum on the books of the company, and that it cannot be held that it was negligent in failing to do so. This contention of the bank cannot be sustained. We have said: "The assignment of stock certificates vests in the assignee an inchoate title, which for sixty days has the effect of a complete title; but unless within that time it is perfected by the entry of the transfer upon the books of the company, it expires, and the transfer becomes invalid; the title of the assignor has not been divested, and the stock is subject to attachment at the suit of his creditors. That the statute to the same extent applies to pledges of stock as well as to an assignment thereof is settled in this jurisdiction." *Hexter v. Shahan,* 66 Colo. 156, 159, 180 Pac. 93.

When the bank accepted the certificate, the contract of pledge thereby created carried with it the implication that the certificate should be preserved and made effectual, to the end that it would be available to discharge the obligation. *Robertson v. Bank,* 67 Colo. 517, 522, 186 Pac. 542.

When delivered to the bank the certificate passed beyond the control of Mulvihill and his principal. The bank, by its possession of the certificate, had the exclusive dominion, control and authority over it, and we cannot escape the conclusion that, being in the exclusive possession, the duty devolved upon it to make the registry upon the books of the company, as the only means of preserving the pledge from loss to itself and to the surety as an accommodation maker. The bank as pledgee became a trustee of the pledge for all concerned. Jones on Pledges and Collateral Securities, § 514. As soon as the right of surety was created, the bank could not, by any act of commission or omission, destroy the surety's interest in the pledge or impair it as security, without a violation of its trust. *Nelson v. Williams,* 22 N. C. 118.

"Where the nature of the collateral security given requires something to be done at once, by the creditor, to make it a valid security, the law implies an agreement on his part to perform that act without which the security will be invalid, and an omission to do this is such gross neglect on the part of the creditor toward the surety as will operate to discharge the surety, at least to the extent of the loss, if the collateral security is thereby lost or impaired." American Annotated Cases, 1912 D, 117–118; *Schroeppell v. Shaw,* 3 N. Y. 446.

Under this state of facts the bank was clearly guilty of negligence. *Robertson v. Bank,* 67 Colo. 517, 521, 186 Pac. 542.

The court allowed the plaintiff below $125 attorney's fee. This was error. There was no proof whatever that the bank had paid or obligated itself to pay an attorney's fee.

The judgment is reversed and a new trial granted.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE DENISON concur.