No. 29,504.

Carl M. Light, *Appellee*, v. St. Paul Fire & Marine Insurance Company, *Appellant*.

No. 29,505.

O. E. Cowan, *Appellee*, v. St. Paul Fire & Marine Insurance Company, *Appellant*.

(296 Pac. 701.)

Opinion filed March 7, 1931.

*C. A. Matson, I. H. Stearns, E. P. Villepigue,* all of Wichita, and *Elmer E. Euwer,* of Goodland, for the appellant.

*Frank J. Horton,* of Goodland, for the appellees.

The opinion of the court was delivered by

Burch, J.: These were actions to recover on hail insurance policies. Plaintiffs prevailed, and the insurance company appeals.

The contentions of the insurance company are the same in each

case, except that one question is involved in the Light case which is not involved in the Cowan case. Therefore, decision of the Light case will dispose of both.

On June 22, 1928, there was a hailstorm in the part of the county in which plaintiff's land lies. There was evidence the hailstorm did not injure plaintiff's wheat crop. The next day he procured the policy sued on. On July 11 another hailstorm occurred, and plaintiff's crop was damaged. Plaintiff and the insurance company signed a nonwaiver agreement, the loss was ascertained, and on July 19 plaintiff and the insurance company signed a loss agreement, subject to the terms of the nonwaiver agreement, that the amount of loss was 44 per cent. At the trial there was some evidence that plaintiff's crop had previously been damaged by hail. If so, it must have been by the hailstorm of June 22.

The policy stated it was issued in consideration of the warranties, stipulations and conditions contained in the application, and incorporated the following from the application:

"Has crop been damaged by hail? No. . . .

"I also agree that this application is made with specific reference to the 'Policy Stipulations and Agreements,' statements and representations above contained, and also printed on the back hereof and which are made a part of this policy, a duplicate of which application is to be attached to my policy of insurance issued by the St. Paul Fire & Marine Insurance Company, St. Paul, Minn., and in addition to the printed portion of said policy, constitutes my contract with said company."

The policy then continued as follows:

"POLICY STIPULATIONS AND AGREEMENTS.

"This policy of insurance is based upon the representations and descriptions contained in the assured's application and diagram of even number herewith, which are hereby made a part of this contract together with the representations of the assured with respect to amounts, limits per acre, premium, ownership, location, and description of crops insured hereunder; and it is further stipulated and agreed that any false statements or descriptions made in said application, or any fraud or attempted fraud, false swearing, or misrepresentations by the assured, whether made before or after a loss has occurred, relative to this insurance . . . shall in each and every case render this entire policy null and void."

The insurance company requested an instruction on the theory the answer to the question regarding previous damage by hail was a warranty. The court instructed the jury on the theory of representation with intent to defraud.

The statement in the policy that the consideration for the insurance was based on the warranties contained in the application contains the only reference to the subject of warranty. The statement sends us to the application to see if there was any warranty. The application recited it was made with respect to the policy stipulations and agreements. The policy stipulations and agreements relate to nothing but representations and fraud and false swearing. Representations are not warranties, unless unequivocally made so by express agreement. (*Blades v. Insurance Co.*, 116 Kan. 120, 225 Pac. 1082.) This is a general rule, applicable alike to property and life insurance policies.

On July 21 the insurance company wrote a letter to plaintiff stating the conditions of the policy had been violated and the policy was canceled, and stating that Shimeall, the company's agent and payee of the note, had been "informed to deliver to you your promissory note given in payment of this policy." The insurance company authorized Gibbons, who had acted for the company in adjusting the loss, to return to plaintiff his premium note. The note was in the First National Bank of Tipton, and the company took it up. The day after plaintiff received notice of cancellation of his policy he was in the bank, and Gibbons gave plaintiff the note. Defendant claimed accord and satisfaction as a matter of law. The court submitted to the jury the question whether plaintiff received the note as and for satisfaction of any claim he might have against the company on the policy.

Gibbons testified as follows:

"I asked him, I believe, if he received any communication from the company in regard to the loss, and he said to me he had received a registered letter, I believe the day before, and I then got the note that Mr. Light had given Mr. Shimeall in payment for the policy, called Mr. Light into the office there, and in the presence of Mr. Shimeall I returned Mr. Light's note to him, . . ."

Afterwards Gibbons testified as follows:

"The only conversation I can recall definitely is that I asked him if he had heard from the company, and he said that he had, and when I told him— asked him if they had said anything about returning the premium, he said they had, and I gave him the note as return of that premium."

It will be observed Gibbons did not say he told plaintiff the note was being delivered to him as return of the premium, and the letter to plaintiff merely stated that Shimeall had been directed to deliver the note to plaintiff.

Plaintiff testified as follows:

"Q. What did you do with it after you accepted the note, if you did accept it? A. I don't remember.

"Q. Well, did you accept the note back at the bank? A. Well, I took it; told them I didn't know what to do with it; told them I would have to see about it.

"Q. Did they tell you why they were tendering it back to you? A. Yes; they said they had throwed my policy out.

"Q. [BY THE COURT.] What was your answer? A. They said they throwed my policy out, and the note was no good."

There was no dispute between the parties in process of adjust-ment, the insurance company made no proposition to plaintiff re-lating to settlement of anything, and there was no settlement or adjustment pursuant to which the note was delivered. Plaintiff was not invited to assent to anything, and he did not assent to anything. He was simply told the conditions of the policy had been violated, the policy had been canceled and was no good, and the note was no good, and the note was handed to him. The result is, there was no semblance of accord and satisfaction as a matter of law.

The court authorized the jury to allow interest on the amount of the loss from July 24, 1928, the date plaintiff's note was handed to him. The amount of loss in case of liability was agreed on, and the claim became a liquidated claim on July 19.

The action was commenced November 7, 1928. The trial com-menced November 25, 1929, the verdict was returned November 26, and the judgment was rendered November 30. The court allowed plaintiff an attorney fee which was taxed as costs under the statute which reads:

"That in all actions now pending, or hereafter commenced, in which judg-ment is rendered against any insurance company on any policy given to insure any property in this state against loss by fire, tornado, lightning or hail, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs: *Pro-vided, however,* That when a tender is made by such insurance company be-fore the commencement of the action in which judgment is rendered and the amount recovered is not in excess of such tender no such costs shall be al-lowed." (R. S. Supp. 40-908.)

This statute took effect March 14, 1929. The statute amended a previous statute providing for an attorney fee in actions on policies insuring property against loss "by fire, tornado, or lightning." The amendment consisted merely in striking out the word "or" and add-ing the words "or hail."

The insurance company contends the attorney fee should not have been allowed, and discusses the subjects of violation of contract, penalties and forfeitures, and retroactive legislation.

Insurance is a business affected with a public interest. The state is interested in the prompt settlement of claims against insurance companies created by destruction of property, and is interested in seeing that the courts are not used for purpose of vexation and delay in actions for the enforcement of obligations to pay claims for property destroyed. Therefore the state may penalize insurance companies for not making prompt payment of claims which are adjudged to have been meritorious. A statute providing for a penalty in the form of an attorney fee to be taxed as costs in a successful action has no effect on the contract of insurance. The conditions and the extent of liability on the contract are not modified. The statute relates solely to disregard of the obligation to pay after liability has accrued, and affects cost of litigation only.

In this instance the farmer's wheat crop was destroyed in July, 1928. It is now March, 1931, and he does not have his money yet. Aside from the matter of attorney fee there is no merit in this appeal. The court cannot discover from the record that the question whether an attorney fee was allowable was ever presented to the district court. The notice of appeal indicates quite clearly the subject of attorney fee was not specifically in mind when the appeal was taken, and probably all the court has to say on the subject is *obiter*. However this may be, the statute was prompted by pertinacious practices of insurance companies, and the legislature may protect the public interest with respect to delinquency in the satisfaction of claims already in existence, as well as with respect to claims to accrue. Prompt settlement is the desideratum, and the public policy is the same in one case as in the other.

Besides giving insurers the needed substitute in money for destroyed property, prompt settlement would relieve the cluttered condition of court dockets; and in this instance the insurance company had more than eight months after the statute took effect, and before trial, in which to settle plaintiff's claim and avoid imposition of extra costs.

Plaintiff moves this court to allow a fee for the services of his attorney in connection with the appeal. The statute confers no authority on this court to make the allowance, and the motion is denied.

The judgment in each case is affirmed.