EDWIN H. LUIKART, RECEIVER, APPELLEE, v. JAMES C. FLAN-NIGAN ET AL., APPELLANTS.

FILED MAY 8, 1936. No. 29473.

*Hall, Young & Williams,* for appellants.

*I. J. Dunn* and *F. C. Radke, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

ROSE, J.

This is an action on a 5,000-dollar surety or fidelity bond wherein the Citizens Bank of Stuart and the state of Nebraska were obligees. The bank became insolvent and the state department of banking took charge of it December 1, 1930. In a proceeding to wind up its affairs, the district court for Holt county appointed Edwin H. Luikart receiver and as such he is plaintiff.

James C. Flannigan, the vice-president and a director of the bank, was the principal obligor and his surety was the American Surety Company. Both are defendants. To the extent of $5,000, they bound themselves, by their bond, to protect and indemnify the bank from all pecuniary loss sustained by it through or by reason of the fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction, misapplication or misappropriation, or any other dishonest or criminal act, of or by the bank officer, directly or through connivance with others, while in the employ of the bank. These contractual obligations were required by statute. Comp. St. 1929, sec. 8-103. The bond was in force on and after May 31, 1930, until the bank was closed for insolvency December 1, 1930.

The petition contained pleas that, while the bond was in force, defendants incurred liability thereon for bank losses in excess of $5,000 by misapplication of assets and other wrongful and illegal acts of James C. Flannigan, vice-president and director, in the following particulars: Transferring assets which depreciated in value before being recovered by the receiver; making excessive loans for the bank; allowing illegal preferences to some of the depositors; permitting withdrawals of deposits, knowing the bank was insolvent; drawing salary in excess of the legal amount. The different items of losses were stated in detail and each of the alleged unlawful acts of the vice-president and director were attributed also to John M. Flannigan, president and director, and to Thomas S. Mains, cashier and director.

The answer of defendants denied the allegations of fact on which their alleged liability was based. The reply to the answer was a general denial.

The parties waived a jury. Upon a trial of the cause, the district court found the issues in favor of plaintiff, entered a judgment against defendants for $6,239.58, including interest, and they appealed.

The first point urged for a reversal is the failure of the receiver to prove his authority to bring the action, the affirmative of the proposition having been alleged in the petition and denied in the answer. It is argued by defendants that the burden was on plaintiff to prove an order of court authorizing him to commence an action on the bond. In this connection reference is made to the statute providing: "Every order appointing a receiver shall contain special directions in respect to his powers and duties." Comp. St. 1929, sec. 20-1087. This applies to receivers generally, while other statutes deal specifically with the powers and duties of receivers in actions by the state to wind up the affairs of insolvent state banks—the business of banking corporations being affected with a public interest. A statute and the bond itself make the state of Nebraska an obligee. Comp. St. 1929, sec. 8-103. The petition alleges and the answer admits that Luikart is receiver.

The plain import of the banking laws is that it is the duty of the receiver of an insolvent state bank to wind up its affairs. According to the authorized procedure, the attorney general applies to the district court for a determination of insolvency or of violation of law and for an order appointing a receiver. Upon a finding of insolvency or of such violations of law as to authorize the closing of the bank, "decree shall be entered and the bank ordered liquidated." Comp. St. 1929, sec. 8-190. As thus used in the banking laws, "liquidation" means winding up the affairs of the bank. In connection with the statute, the appointment of a receiver for the purpose of liquidation includes power to sue for the recovery of assets and for the losses which the bank suffered by wrongful acts committed by its officers in violation of their bonds. A plain duty of the receiver in that respect did not necessarily require a separate judicial order granting him permission to sue. Proof of such an order was unnecessary in the present instance. *Jeffries v. Bacastow,* 90 Kan. 495, 135 Pac. 582. The assignment of error directed to this point is therefore overruled.

An elaborate argument is directed to the proposition that the evidence is insufficient to sustain findings that the bank sustained bonded losses through illegal acts of James C. Flannigan, vice-president, in transferring assets which depreciated in value before being recovered by the receiver; in making excessive loans; in allowing illegal preferences during insolvency; in permitting withdrawals of deposits, knowing of the insolvency; in drawing excessive salary while the bond was in force.

The record contains evidence tending to prove insolvency of the bank and actionable losses prior to the execution of the bond, but this does not require a reversal, if competent evidence is sufficient to sustain the finding of the district court that such losses of the bank during the period covered by the bond aggregated $5,000, the penalty or amount for which the surety became liable with interest. In that contingency it will be presumed that material evidence only was considered, since the cause was tried to the court with-

out a jury. Disregarding incompetent testimony, there is evidence tending to prove that actionable losses sustained by the bank in violation of the bond exceeded $5,000 with interest added. The finding of the trial court to that effect is equivalent to the verdict of a jury and, not being clearly wrong, is conclusive on appeal.

There is further contention by defendants that the district court erred in finding that John M. Flannigan, president, and Thomas S. Mains, cashier, committed the identical acts resulting in the losses for which the vice-president was held liable. Each of the three executive officers gave a surety or fidelity bond similar to that of the others. There was the same surety on each and the same penalty—$5,000. The receiver brought a separate action on each bond. The cases were consolidated and tried together. The evidence in one case applied to the others. Losses resulting from misapplication of assets and other actionable wrongs committed in violation of the bonds were not limited to individual acts of an executive officer. Such losses, "directly or through connivance with others," created a liability under both bond and statute. It was the affirmative duty of each executive officer to guard against such losses. Each knew in advance that the cash reserve of the bank had dwindled below the statutory limit and that the bank was insolvent. In that situation, each performed or knowingly permitted the illegal acts resulting in the losses. In contemplation of law, the evidence supports the finding that each executive officer is liable on his bond for the unlawful acts of the others.

The district court allowed plaintiff an attorney's fee of $300 in each case and the taxing thereof as costs is challenged as erroneous. Defendants insist that these fees were unauthorized. A statute provides that, in an action against a company on a policy of fidelity insurance or other insurance of a similar nature, "the court, upon rendering judgment against such company, person or association, shall allow the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his recovery, to be taxed

as part of the costs." Comp. St. 1929, sec. 44-346. This is authority for the allowance of a reasonable attorney's fee in the case at bar, if the claim therefor was properly and timely presented upon a record containing a sufficient showing as to the amount allowed and taxed as costs. It is argued, however, that the record is fatally defective in the following respects: The petition did not contain a claim for an attorney's fee; it was allowed at a subsequent term of court, after jurisdiction to allow it had been lost, and not "upon rendering judgment," as required by statute; there is no evidence of the value of the services performed by counsel for plaintiff. These propositions seem to be at variance with former decisions of the supreme court. A claim for an attorney's fee after judgment in favor of plaintiff in an action on a fidelity policy or bond may be presented by motion at a subsequent term of court—the course taken herein. *Allen v. Tallon,* 120 Neb. 611, 234 N. W. 411. In that case the supreme court said:

"The district court has a general knowledge of the value of legal services, and attorney's fees are often allowed for services performed in that court without calling witnesses."

The judge who presided at the trial herein considered the motion for an attorney's fee. There were vigorous defenses to overcome both at the original trial and at the subsequent hearing on the motion. The record is long and complicated. It was made in the presence of the trial judge who had knowledge of the value of legal services. It shows skill, preparation and earnest effort by counsel on both sides and contains ample evidence of the value of the legal services performed for plaintiff to sustain the allowance of a 300-dollar fee in each case, or $900 in all, when the trial judge's knowledge of value on that issue is considered. For services performed by attorneys for plaintiff on appeal to the supreme court, a fee of $100 is allowed in this case and will be taxed as costs.

Finding no reversible error in the record, the judgment below is

AFFIRMED.