275 P.2d 969

Wayne C. PENROSE, Plaintiff-Respondent,

v.

COMMERCIAL TRAVELERS INSURANCE COMPANY, a corporation, Defendant-Appellant.

No. 8129.

Supreme Court of Idaho.

Oct. 29, 1954.

Merrill & Merrill, Pocatello, for appellant.

Anderson & Anderson, Pocatello, for respondent.

THOMAS, Justice.

Plaintiff, hereinafter referred to as respondent, instituted an action to recover monthly sick benefit payments under an insurance policy issued to him on November 15, 1945, by defendant, hereinafter referred to as appellant. The matter was tried before a jury. At the close of the evidence appellant made a motion for non-suit and respondent moved for a directed verdict, whereupon the court discharged the jury and made its findings of fact, conclusions of law and entered judgment for respondent. From judgment for respondent in the sum of $1,700, together with attorneys' fees in the sum of $500 and costs, this appeal was taken.

Both parties treated the material facts as without dispute and to the effect that there was no issue for the jury and it was proper for the court to decide the case upon the undisputed material facts and the law to be applied thereto.

There are two decisive questions submitted before this court on appeal: First, whether or not respondent comes within the provisions of Part D, section 1 of the policy with reference to house confining sickness or Part D, section 2, with reference to the convalescence clause thereof; secondly, whether under the terms of the insurance policy respondent, to whom the court allowed attorneys' fees in the sum of $500, is entitled to any attorneys' fees under Chapter 289, Session Laws of 1951

Part D of the policy appertaining to monthly sick benefits provides as follows:

"Confining Sickness Sec. (1). If such sickness shall wholly and continuously disable the Insured from performing any and every duty pertaining to his business or occupation, and shall necessarily and continuously confine him within the house, the Company will pay the Sickness benefit at the rate per month specified in Part A 2.

"Convalescence Clause Sec. (2). Or, for the period not exceeding one month, immediately following said confinement, or by reason of any non-confining sickness during which the Insured shall be wholly and continuously disabled from performing any and every duty pertaining to his business or occupation, the Company will pay the Sickness benefit at the rate per month specified in Part A 2.

"Provided that benefits under this Part shall not be paid in excess of the time the Insured is under the regular attendance of a legally qualified physician or surgeon and benefits payable

shall commence after one week of disability."

Part I, Paragraph 5, of Miscellaneous Provisions also provides:

"The phrase 'regular attendance of a legally qualified physician or surgeon' as used herein, shall be defined to mean visits of, or personal treatments by the physician at least once in every seven days."

Chapter 289, page 621, 1951 Session Laws, provides in pertinent part as follows:

"Section 1. Any company, corporation, * * * issuing any policy, * * * of insurance, * * * of any kind or nature whatsoever, which shall fail to pay to the person, firm or corporation entitled thereto the amount justly due under such policy, certificate or contract, shall, in any action in any court in this state for recovery under the terms of such policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorneys' fees in such action. In any such action, if it shall be alleged that before the commencement thereof, a tender of the full amount justly due was made to the person, firm or corporation entitled thereto, and such amount be thereupon deposited in the court, and if the allegation be found to be true, or if it be determined in such action that no amount is justly due, then no such attorneys' fees may be recovered.

"Section 2. The provisions of this Act shall not apply to any action commenced before the effective date hereof.

"Approved March 22, 1951."

Respondent is a farmer and livestock raiser, farming approximately 575 acres of land at Cambridge, Idaho, which is three miles north of Downey, Idaho. On May 3, 1952, respondent suffered a heart attack, diagnosed as coronary occlusion, and was confined to the hospital at Downey from May 5, 1952, to June 5, of the same year, under order of the doctor who attended him at all times thereafter to and including the time of the trial which was held on the 5th day of October, 1953.

Upon his release from the hospital and pursuant to the directions and orders of his attending physician he was taken to the home of his father for a week or ten days where he was continuously confined, and was thereafter moved to his own home.

Under and pursuant to the terms of the policy appellant paid respondent $300 for the period he was confined in the hospital and later tendered him an additional $200 for a period of one month under the convalescence clause thereof, which respondent refused to accept. The policy has a total limitation on payments of $2,000; hence the maximum which respondent could re-

cover was $1,700 additional, at the rate of $200 a month for the next eight and one-half months following his release from the hospital, that is, up to and including February 20, 1953.

About three weeks after his release from the hospital or in the neighborhood of July 1st he left the house for limited excursions out on the lawn where he would sit down; at times he gave instructions with reference to the farm work to his two sons, one 12 years of age and the other 14 years of age at the time of the trial; the record indicates that much of the heavy farm work was done by respondent's father, other relatives, friends, and neighbors as the boys were too young to carry on this responsibility; while the time is not fixed with any definiteness, respondent would go to Downey once in a while in the family car which was usually driven by his wife and infrequently by himself; his doctor made three or four calls at the home and at all other times he went to the office of the doctor in the family car, driven by his wife on most occasions; he went to the doctor's office at least once a week for about two months; thereafter, during the balance of the time it is claimed he was confined under the house confining clause of the policy, no dates being fixed with exactitude, he went to the office of his doctor at least once a month.

Prior to his affliction, respondent attended church regularly and was active in church work; after his affliction he never attended church until sometime in the month of October and thereafter attended one service on each Sunday whenever he felt his strength would permit. Whenever he went to Downey, apparently to see his doctor, or if for any other reason, the record being very indefinite as to the time or the number of trips to Downey except to visit his doctor, he would occasionally drop in and sit down for a few minutes' visit with business friends.

On October 22, 1952, he sold a horse and at that time was out in the pasture for a brief period of time while his two boys were catching the horse which he led to the barnyard. Again, that same month he set the grain drill, a very simple and easy task, so his boys could drill the fall wheat.

In the month of October, 1952, respondent accompanied another party, traveling by car, to Logan, Utah, where he had a brief visit with a friend, being away from home but a few hours; on one occasion, the time not being fixed, he went to Pocatello with a neighbor; sometime just before Christmas his wife took him to Pocatello in the family car which she drove and while they were there he visited his sister for about three hours before they returned home; on December 12, 1952, at the request of his doctor, he went to Salt Lake to see a heart specialist and was gone two or three days, staying at the home of his aunt and in her house most of the time. His wife accompanied him, doing all the driving in the family car; again on February 10, 1953, he

attended a 4-H Club banquet in Pocatello. On this occasion he accompanied a neighbor and the sons of both parties.

In the months of February and March, 1953, he drove his tractor in the field some days while his wife fed the livestock; his wife did all the work in connection with feeding the stock during this time except driving the tractor. These efforts consumed about ten minutes of respondent's time during the days he drove the tractor.

Sometime early in the spring of 1953, it could have been either before or after February 20, 1953, the date not being fixed, he apparently made one visit to a bank in Downey in connection with the sale of his crop of the previous fall.

In May, 1953, which period is beyond the questioned period covered by the policy, respondent was summoned on the federal jury at Pocatello; he was taken to Pocatello by his wife and was, because of his health, excused from jury service.

On practically every occasion that respondent left his house, particularly on those occasions when he went to town or to Pocatello, Idaho, Logan, Utah, or Salt Lake City, Utah, he went with the knowledge and approval of his attending physician who advised him at the time he became afflicted and at times thereafter that he should refrain from any farm work in 1952 as far as heavy work goes and prescribed confinement to his bed and to his home for a period of the first six months with a gradual increase of activities thereafter as his strength and health would permit, including advice to go out in the air and get mild exercise; he had experienced little if any change in his physical condition from the time he was in the hospital to the time of the trial in October, 1953.

■ From the record there is no doubt but that the affliction of respondent wholly and continuously disabled him from performing any and every duty pertaining to his occupation as a farmer; while he might be able personally to do trivial and minor things, which neither required much time nor physical exertion, and through others, acting under his supervision and direction, accomplish heavier tasks requiring physical effort, which ordinarily he could well have done himself prior to the affliction, does not mean that he is not disabled within the terms and intent of the policy; this is especially so when the things which he could not do constituted substantially all the duties of his occupation as a farmer. Great Northern Casualty Co. v. McCollough, 96 Ind.App. 506, 174 N.E. 103.

There remains the question of whether or not his disability compensation should be denied for the reason that he left the confines of four walls of his home for the reasons and on the occasions as outlined herein rather than continuously confining himself within his house for the entire period of eight and one-half months following his release from the hospital, and for the further reason that the doctor did not visit

532

him or personally treat him at least once in every seven days.

 It is urged by appellant that the contract of insurance is unambiguous and that there is no room for interpretation; that being unambiguous it will be construed as any other contract. This court has so held. Maryland Casualty Co. v. Boise Street Car Co., 52 Idaho 133, 11 P.2d 1090. On the other hand, this court has also committed itself to the rule with reference to insurance policies that in instances where a clause therein is susceptible to more than one construction the one most favorable to insured will be adopted, and such contracts will be construed in view of their general objects and the conditions prescribed by the insurer rather than based upon a strict and technical interpretation. O'Neil v. New York Life Ins. Co., 65 Idaho 722, 152 P.2d 707; Rollefson v. Lutheran Brotherhood, 64 Idaho 331, 132 P.2d 758. In this connection it is to be noted that although the appellant strongly asserts there is an absence of ambiguity, like or similar clauses in other policies, many of which have been construed by other courts, support the view urged by respondent; because so many jurisdictions have construed like or similar clauses adverse to the contentions advanced by appellant, they deserve and will receive our serious consideration.

Similar provisions are found in such policies requiring the insured to be "continuously confined within the house", "necessarily confined to the house", "necessarily, strictly, and continuously confined to the house", and many other similar provisions, some less strict and some more strict than the policy in question; innumerable cases have been before the courts involving such clauses and the decisions are by no means harmonious. See the exhaustive annotation in 29 A.L.R.2d, commencing at page 1408.

 The policy before this court was issued to respondent on November 15, 1945; its preparation and phraseology no doubt are the result of work of skilled counsel employed by appellant who were acquainted with the numerous decisions of the courts of various jurisdictions which were released and published prior to the issuance of the policy. Many of such cases appear in the annotation in 29 A.L.R.2d. It follows that when appellant issued the policy to respondent it was aware of the construction which numerous courts of last resort had placed upon not only the exact phraseology which it employed but phraseology of similar import. It likewise knew that such decisions were not by any means harmonious and that hence an ambiguity existed and that the particular question had never been presented to but was one of first impression in this court; moreover, at the time the instant policy was issued this court had committed itself to the rule of a construction favorable to insured and had rejected a strict technical interpretation.

O'Neil v. New York Life Ins. Co., 65 Idaho 722, 152 P.2d 707. See also Maryland Casualty Co. v. Boise Street Car Co., supra, and the cases therein set forth.

A number of cases cited in the annotation in 29 A.L.R.2d, as well as others, have construed the house confinement clause literally and denied the insured any recovery where he has left the house at any time and for any reason, with the possible exception of leaving the house because of some emergency beyond his control. In this category will be found instances where insured was forced to leave the house because of flood or fire or other catastrophe. 29 A.L.R.2d § 3, p. 1413. In some of the cases which have applied the literal construction to the clauses in this respect exceptions also have been made where the insured has departed from the house on occasions for therapeutic reasons. 29 A.L.R.2d, § 8, pp. 1428–1437, § 10, p. 1439.

In some jurisdictions the presence or absence of a convalescence or non-house confining clause also has appeared to influence the construction placed upon and the application made of the house confining clause; where the court has been influenced by the presence of the additional convalescence or non-house confining clause, it has been reasoned that the house confining clause must be given a strict interpretation in order to give full effect and meaning to the non-house confining clause. Other jurisdictions have held that house confining clauses are not affected by the presence or absence of a non-confining clause; where the courts have rejected a literal construction in instances where both clauses are present it appears that they have applied the doctrine of substantial confinement. 29 A.L.R.2d, § 4, p. 1419, § 6, pp 1425 & 1426.

In a majority of the jurisdictions the courts have either directly and expressly or by implication rejected the literal construction entirely and in lieu thereof have adopted and applied a liberal construction. 29 A.L.R.2d, § 4, p. 1415.

In many jurisdictions which have permitted recovery the courts have placed great emphasis on the nature of the illness or other disability rather than on the extent of the confinement, reasoning that the purpose of the house confinement provisions is to describe the character, degree or extent of the illness or disability rather than a strict limitation upon the insured's conduct. Where such theory has been invoked, if the insured's illness or disabilty is of such a serious nature as to confine the insured, or one generally and commonly regarded as so confining, then an occasional departure from the house does not take the insured outside of the protection of the policy; where this condition exists the insured's disability or illness is sufficiently severe to confine him substantially all of the time as is particularly pointed out in the case of Purcell v. Washington Fidelity Nat. Ins. Co., 146 Or. 475, 30 P.2d 742. See also National Accident & Health Ins.

Co. of Philadelphia v. Mergenov, 49 Ohio App. 353, 197 N.E. 248; Donlen v. Fidelity & Casualty Co., 117 Misc. 414, 192 N.Y.S. 513; Wade v. Mutual Ben. Health & Accident Ass'n, 115 W.Va. 694, 177 S.E. 611; Albert v. Mutual Ben. Health & Accident Ass'n, Omaha, 350 Pa. 268, 38 A.2d 321.

In some jurisdictions where recovery has been allowed although the insured has departed from the house for any reason, the courts have advanced the proposition that the house confining clause is merely evidentiary, designed to establish with certainty that the insured was totally disabled. Colorado Life Co. v. Steele, 8 Cir., 101 F.2d 448; Metropolitan Plate Glass & Casualty Ins. Co. v. Hawes' Ex'x, 150 Ky. 52, 149 S.W. 1110, 42 L.R.A.;N.S., 700; Scales v. Masonic Protective Ass'n, 70 N.H. 490, 48 A. 1084; Federal Surety Co. v. Waite, Tex.Civ.App., 297 S.W. 312; Standard Accident Ins. Co. v. Brock, Tex. Civ.App., 1 S.W.2d 678. However, this theory has been rejected in other cases. Dunning v. Massachusetts Mut. Acc. Ass'n, 99 Me. 390, 59 A. 535; Bruzas v. Peerless Casualty Co., 111 Me. 308, 89 A. 199; Lieberman v. Columbia Nat. Life Ins. Co., 47 Pa.Super 276; Stahl v. Ridgely Protective Ass'n, 18 Pa.Dist. & Co. 719.

█ The total hours which respondent was outside his home during the eight and one-half months after his release from the hospital, exclusive of the time he was absent therefrom primarily for therapeutic reasons, while not definitely fixed and determined from the record, does in a general way reveal that the aggregate time did not represent any substantial part, but more or less an insignificant part, of the total period; it is plain that the trips to Pocatello, Idaho, one to Logan, Utah, a few trips to Downey, Idaho, occasional attendance at one church service on Sunday, commencing in October, 1952, and the time spent on his lawn, in his yard, and driving the tractor for a period of some ten minutes for several days in the month of February, 1953, represented a minute portion of the period of time covering some eight and one-half months. He did not ignore, disregard or lightly consider the house confinement clause; such provisions do not mean absolute and indubitable constraint but a practical and intelligent remaining within the house, considering the nature of his illness. Albert v. Mutual Ben. Health & Accident Ass'n, Omaha, 350 Pa. 268, 38 A.2d 321. See also the recent case of Franklin Life Ins. Co. v. Bassett, Ala. App., 64 So.2d 613, where the court held specifically that it is a question of fact for the jury whether or not the insured was confined in the house under a clause strikingly similar to the clause in the instant case, although the insured went fishing sometimes twice a week, went to church occasionally, went to a family reunion, also to a nephew's funeral, spent ten days at a lake, went to the doctor's office for treatments and frequently went for a ride in

an automobile. See also Franklin Life Ins. Co. v. Lewis, 36 Ala.App. 313, 55 So. 2d 518; Brandt v. Mutual Ben. Health & Acc. Ass'n, Tenn.App., 202 S.W.2d 827.

We hold in line with the great majority of the cases that so long as the insured was wholly and continuously disabled from performing any and every duty pertaining to his occupation as a farmer (which the court found and the evidence supports) and did not leave his home except for therapeutic reasons other than on a few brief occasions disclosed by this record, he was substantially confined to his home by reason of such illness and that such constitutes a sufficient compliance with the house confinement provision of the policy; we further hold that there must be substantial compliance under the house confinement clause as a condition of recovery and that the insured, having met this requirement, if there are no other reasons why recovery should not be had, the judgment of the court will be affirmed.

It is further asserted that respondent did not bring himself within the provisions of Part I, Paragraph 5 of the Miscellaneous Provisions of the insurance contract because he was not under the regular attendance of a physician who visited him or personally treated him at least once in every seven days. The evidence on this matter is quite uncertain and it is apparent the doctor, while testifying without the benefit of his office records, was con-fused. Even viewing this evidence in the light most favorable to appellant it would appear that the physician visited or treated respondent "possibly once every week" for the first two months after he was released from the hospital and that thereafter he saw him at least once a month at his office at Downey, Idaho. The doctor testified in this connection in substance that there was not anything in particular he could do for respondent other than advise him with reference to a program of rest and to refrain from working.

Such visitations or treatments any oftener, under the testimony of the attending physician, were not required and would be useless, futile and an unnecessary expense to respondent. Among the purposes of this requirement in the light of the primary object and purpose intended to be served by the issuance of the insurance policy would be its evidentiary value as an aid to establish the good faith of the claim and the extent and duration of the disability; again, such provision is designed to guard against possible fraud; here there is no claim of bad faith or fraud nor any serious question as to the nature and extent of the disability; even though the requirement connotes continuity it would be impractical and indeed almost an impossibility to limit treatments or visitations to precise intervals of time.

We have heretofore held that the requirement with reference to continuous confinement within the house is met if

there is a substantial compliance with this requirement. A substantial compliance with the requirement of visitation or attendance of a physician has likewise been met under the evidence adduced in this particular case. This view is supported by a substantial majority, but not all, of the cases which have passed upon this matter. Great Northern Casualty Co. v. McCollough, 96 Ind.App. 506, 174 N.E. 103; National Life Ins. Co. v. Patrick, 28 Ohio App. 267, 162 N.E. 680; Mutual Ben. Health & Accident Ass'n v. Bunting, 133 Fla. 646, 183 So. 321; Bishop v. United States Casualty Co., 99 App.Div. 530, 91 N.Y.S. 176; Melancon v. Provident Life & Accident Ins. Co., 176 La. 1055, 147 So. 346; Inter-Ocean Casualty Co. v. Brown, Tex.Civ.App., 31 S.W.2d 333; Provident Ins. Co. v. Shull, Tex.Civ.App., 62 S.W. 2d 1017; American National Ins. Co. v. Briggs, Tex.Civ.App., 70 S.W.2d 491; Davidson v. First American Ins. Co., 129 Neb. 184, 261 N.W. 144; North American Acc. Ins. Co. v. Henderson, 180 Miss. 395, 177 So. 528; Hunter v. Federal Casualty Co., 199 App.Div. 223, 191 N.Y.S. 474; Harasymczuk v. Massachusetts Accident Co., 127 Misc. 344, 216 N.Y.S. 97; Moore v. Standard Accident Insurance Co., 245 Ill.App. 300; Emerson v. Old Line Life Ins. Co., 190 Wis. 169, 208 N.W. 793; Rechtzigel v. National Casualty Co., 143 Minn. 302, 173 N.W. 670. See also 45 C.J.S. Insurance, § 899, p. 985.

Appellant has cited the case of Lustenberger v. Boston Casualty Co., 300 Mass. 130, 14 N.E.2d 148, 115 A.L.R. 1055, in support of its position that there was a failure to comply with the visitation or treatment provision of the policy. In that case the court recognized the principle that a provision requiring the care of a physician connoted continuity and that it would be impossible to limit it as to precise intervals of time; however in that case the facts reveal that there was no continuity of visitations or treatment and this was one ground upon which the court denied recovery.

Again, the case of Equitable Life Assur. Soc. v. Burns, 254 Ky. 487, 71 S.W.2d 1009, cited by appellant in support of its position, is readily distinguished. In that case there was no evidence whatever of any treatment or visitations by a physician for the particular injury.

In the case of Mutual Ben. Health & Accident Ass'n v. Cohen, 8 Cir., 194 F.2d 232, the federal circuit court of appeals simply applied the construction and effect given to insurance policies which had been previously applied in the State of Missouri wherein the law of Missouri had been involved. Earlier, Missouri had adopted the literal construction of the provisions of such insurance contracts.

Appellant also contends that the court erred in allowing respondent attorneys' fees in this action. The court allowed at-

torneys' fees pursuant to Chapter 289 of the 1951 Session Laws. The insurance policy was issued November 15, 1945. The affliction of insured occurred on May 3, 1952. It is contended that the statute imposes a new and additional liability upon appellant, one of the parties to a pre-existing contract, and that it is penal in its nature and is unconstitutional as impairing the obligation of an existing contract in violation of Art. 1, Sec. 16, Constitution of the State of Idaho.

The statute in question is clearly intended to be retroactive. However, it is not unconstitutional merely because it is retrospective. 16 C.J.S., Constitutional Law, § 415, p. 858; it is rendered unconstitutional if it impairs contractual obligations, violates due process or disturbs vested rights. 16 C.J.S., Constitutional Law, § 416, p. 859. Again, if such retrospective laws affect only remedies or procedure for the enforcement of existing rights they do not violate the constitutional provisions against the impairment of the obligation of contracts. 16 C.J.S., Constitutional Law, § 418, p. 865.

The particular statute relates to insurance business carried on in this state; such business is affected with the public interest and the private rights of contract in relation thereto must be and are subjected to the valid exercise of the police power by the legislature. Intermountain Lloyds v. Diefendorf, 51 Idaho 304, 5 P.2d 730. It is under the inherent police power vested in the legislature that it saw fit to subject any insurance company, where an action is filed and successfully prosecuted to judgment in any court in this state for recovery on any of its policies issued herein, to the payment of reasonable attorneys' fees.

The particular question presented is one of first impression in this state although it has been considered and passed upon in other jurisdictions; however, the particular statute was recently considered and passed upon by the Honorable Chase A. Clark, Federal District Judge for Idaho, in the case of United States for Use and Benefit of Midwest Steel and Iron Works Co. v. Henly, D.C., 117 F.Supp. 928. In that case the court held that this statute enacted by the legislature under its inherent police power did not violate Art. 1, Sec. 10, Constitution of the United States, which provides that no law may be enacted impairing the obligation of a contract.

While the authorities are not harmonious, the majority of the cases in which this question has been presented have held that the enactment of such statutes constitutes a valid exercise of the police power or of the power to prescribe costs and although they operate retrospectively this does not render them unconstitutional as impairing the obligation of the contract. Spicer v. Benefit Ass'n of Ry. Employees, 142 Or. 574, 17 P.2d 1107, 21 P.2d 187, 90 A.L.R. 517; Buckles v. Continental Cas. Co., 197 Or. 128, 251 P.2d 476, 252 P.2d 184; Lane v. Brotherhood of Locomotive Enginemen,

etc., 157 Or. 667, 73 P.2d 1396; Germania Fire Ins. Co. of New York v. Bally, 19 Ariz. 580, 173 P. 1052, 1 A.L.R. 488; Dowell v. Talbot Paving Co., 138 Ind. 675, 38 N.E. 389; Lake Erie & W. R. Co. v. Walters, 13 Ind.App. 275, 41 N.E. 465; County of Kossuth v. Wallace, 60 Iowa 508, 15 N.W. 305; Ahmed's Case, 278 Mass. 180, 179 N.E. 684, 79 A.L.R. 669; Butler's Case, 278 Mass. 218, 179 N.E. 690; Norman's Case, 278 Mass. 464, 180 N.E. 238, 82 A.L.R. 885; Perkins v. Stewart, 75 Minn. 21, 77 N.W. 434; Bullard v. Smith, 28 Mont. 387, 72 P. 761; Reed v. American Bonding Co., 102 Neb. 113, 166 N.W. 196, L.R.A.1918C, 63; Nye-Schneider-Fowler Co. v. Bridges, Hoye & Co., 98 Neb. 863, 155 N.W. 235; Murphy v. George Brown & Co., 91 N.J.L. 412, 103 A. 28; Light v. St. Paul Fire & Marine Ins. Co., 132 Kan. 486, 296 P. 701. See also Funkhouser v. J. B. Preston Co., 290 U.S. 163, 54 S.Ct. 134, 78 L.Ed. 243; 46 C.J.S., Insurance, § 1405, pp. 712–715.

This court in the case of Sanderson v. Salmon River Canal Co., Ltd., 45 Idaho 244, 263 P. 32, recognized and approved the principle set forth in the above cases in the following language appearing on page 258 of 45 Idaho, on page 36 of 263 P.:

"The general rule would seem to be that a statute which does not act on the contract itself, but merely on the property which is the subject of the contract, may not be said to impair the obligation of the contract. 12 C.J. supra. The value of the contract may be diminished, but the obligation of the parties to each other is not affected in the slightest degree, as was said in State [ex rel. Coleman] v. Pullman Co., 75 Kan. 664, 670, 90 P. 319, 321. 'Nor does every statute which affects the value of a contract impair its obligation. It is one of the contingencies to which parties look now in making a large class of contracts, that they may be affected in many ways by state and national legislation.' Curtis v. Whitney, 13 Wall. 68, 70, 20 L.Ed. 513. The right to enforce appellant's contracts remains undisturbed, and their validity is not impaired."

On the other hand, there are authorities which seem to hold that the statutory enactment awarding attorneys' fees, and which operates retrospectively although enacted in the exercise of the police power of the legislature or the power to prescribe costs, impairs the obligation of contracts in violation of the Constitution. Central Glass Co. v. Niagara Fire Ins. Co., 131 La. 513, 59 So. 972; Central Glass Co. v. Hamburg-Bremen Fire Ins. Co., 133 La. 598, 63 So. 236; Piedmont & Arlington Life Ins. Co. v. Ray, 50 Tex. 511; American Nat. Ins. Co. v. Donahue, 54 Okl. 294, 153 P. 819. See also Rio Grande Nat. Life Ins. Co. v. Bailey, Tex.Civ.App., 153 S.W.2d 493; Sovereign Camp, W.O.W. v. Gomez, Tex.Civ.App., 129 S.W.2d 784; Peterson v. Jahn Contracting Co., 96 Wash. 210, 164 P. 937.

Many of the above cases which appear to follow the minority rule, and some of which were cited by appellant, are readily distinguishable and were distinguished in the case of Spicer v. Benefit Ass'n of Ry. Employees, 142 Or. 574, 17 P.2d 1107, 21 P.2d 187, 90 A.L.R. 517; for instance, in the case of Central Glass Co. v. Niagara Fire Ins. Co. the statute affected not merely the remedy but a right under the contract for the reason that the statute required the insurer to supply all policyholders with forms for making proof of loss; in the case of Piedmont & Arlington Life Ins. Co. v. Ray the statute not only provided for the payment of attorneys' fees but also for 12% damages, that is, it required the insurer to do something more than pay attorneys' fees; he was required to pay damages which, if any, took place after the enactment of the statute.

The statute in question gives no additional advantage to the insured; it does not provide for damages but provides for reasonable attorneys' fees only; it does not provide any additional sum to go to the insured over and above that provided in the contract but attempts to prevent the sum therein provided from being diminished by expenditures for the services of an attorney; it does not disturb nor alter nor impair the obligation of the contract itself, neither has it any effect on the contract proper; the conditions, terms and extent of liability on the contract are not changed; it affects only the cost of unsuccessful litigation; moreover, the parties entered into the insurance contract charged with the knowledge of the reserved police power of the state which may at any time be invoked in the promotion of the general welfare by enlarging from time to time the remedies and procedures in connection with insurance contracts; the statute challenged does not affect the substantive matter of the contract; it only enlarges the remedies and procedures available to an insured whose claim is not paid who is obligated to litigate and does successfully litigate his claim under the insurance contract. It follows that the statute does not violate Art. 1, Sec. 16, Constitution of Idaho, prohibiting the enactment of a law impairing the obligation of a contract. Particular reference is made to United States for Use and Benefit of Midwest Steel and Iron Works Co. v. Henly, D.C., 117 F.Supp. 928 and the cases cited and reviewed therein.

It is further contended by appellant that even though the statute does not violate Art. 1, Sec. 16, Idaho Constitution, the attorneys' fees cannot be allowed for the reason there was no evidence introduced with reference to the necessity for nor the reasonableness of the attorneys' fees allowed; appellant does not assert that the fee allowed was unreasonable or excessive, but simply asserts it cannot be allowed because there is an absence of any evidence touching its reasonableness. This contention is without merit. The statute in question provides that in any action in the courts of this state for the recovery under such an insurance policy in-

540

surer shall pay such further amount as the court shall adjudge reasonable as attorneys' fees unless there is no recovery. What is a reasonable attorneys' fee is a question for the determination of the court, taking into consideration the nature of the litigation, the amount involved in the controversy, the length of time utilized in preparation for and the trial of the case and other related factors viewed in the light of the knowledge and experience of the court as a lawyer and judge; it is not necessary in this connection that he hear any evidence on the matter although it is proper that the court may have before it the opinion of experts. Luikart v. Flannigan, 130 Neb. 901, 267 N.W. 165. See also Buckles v. Continental Cas. Co., 197 Or. 128, 251 P.2d 476, 252 P.2d 184; Hagey v. Massachusetts Bonding and Ins. Co., 169 Or. 132, 126 P.2d 836, 127 P.2d 346; 46 C. J.S., Insurance, § 1405, pp. 714-715.

The judgment should be affirmed; however in view of the opinion of the majority on the issue of attorneys' fees, that part of the judgment allowing attorneys' fees is reversed.

Costs to respondent.

TAYLOR, J., concurs.

GIVENS, Justice.

■ I concur with the opinion written by THOMAS, J., except as to the allowance of attorneys' fees, and dissent from that portion because, to apply the statute enacted after the insurance policy was written im-

pairs the obligation of contract. Authorities supporting this proposition are cited in the majority opinion and it is unnecessary to add thereto, although there are others to like effect.

PORTER, C. J., concurs herewith.

KEETON, Justice.

I concur with the opinion of Justice GIVENS disallowing attorney fees. To hold that Ch. 289, 1951 S.L. would apply to contracts of insurance written prior to its enactment, would create a new liability and impose a burden not covered by the terms of the insurance policy. Further there was no proof submitted that an attorney fee was contracted or the reasonableness of the fee allowed by the trial court. That an attorney fee had been contracted by the insured, and the question of its reasonableness, were questions of fact which could not be determined without evidence. Mulvihill v. First National Bank of Arvada, 80 Colo. 72, 249 P. 504; State v. Ganong, 93 Or. 440, 184 P. 233; Holiday Oil Co. v. Smith, 100 Okl. 172, 228 P. 775; England v. Commercial Bank of New Madrid, 8 Cir., 242 F. 813, 155 C.C.A. 401; Power v. City of Breckenridge, Tex.Civ. App., 290 S.W. 872; Decatur Mineral & Land Co. v. Palm, 113 Ala. 531, 21 So. 315; May v. Robinson, 221 Ala. 570, 130 So. 81.

It is further my opinion that the insured was not house confined within the terms

of the policy and that the activities in which he engaged for the period for which he claims disability preclude any recovery. A liberal interpretation of the policy favorable to the insured should not be extended to write an entirely new contract. In the instant case, during the period for which recovery was allowed, the insured transacted business, did some work, and frequently went on trips for various and numerous purposes. He was neither actually nor substantially house confined. Without reviewing authorities or extending the discussion, it is my opinion that the judgment should be reversed and plaintiff allowed to recover only the tendered amount.